IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**STATE OF GEORGIA,**

          **Plaintiff,**

           **v.**

**ERIC H. HOLDER, JR.,**
**in his official capacity as**
**ATTORNEY GENERAL OF THE**
**UNITED STATES,**
           **Defendant,**

**and,**

**TYRONE BROOKS; GEORGIA**
**ASSOCIATION OF BLACK ELECTED**
**OFFICIALS; EDWARD O. DUBOSE;**
**GEORGIA STATE CONFERENCE**
**NAACP; HELEN BUTLER; and GEORGIA**
**COALITION FOR THE PEOPLES'**
**AGENDA,**

          **Applicants to Intervene.**

**Civil Action No. 10-1062 (ESH-HHK)**

## ANSWER OF INTERVENOR-DEFENDANTS TO COMPLAINT

Tyrone Brooks, Georgia Association of Black Elected Officials, Edward O. DuBose,

Georgia State Conference NAACP, Helen Butler, and Georgia Coalition for the Peoples' Agenda

("Intervenor-Defendants"), hereby answer each of the numbered paragraphs of the Complaint

(Docket # 1) filed by the Plaintiff in the above-styled action as follows:

**Answers to Allegations**

1.     Intervenor-Defendants admit the allegations of Paragraph 1 to the extent that they describe the statutory basis asserted by Plaintiff for the claims presented in the Complaint.

2.     Intervenor-Defendants admit the allegations of Paragraph 2 to the extent that the Voting Rights Act authorizes the State of Georgia to bring claims seeking Section 5 preclearance before this Court.  Intervenor-Defendants deny that either the Voting Rights Act or 28 U.S.C. 2201 authorizes the State of Georgia to bring the claims presented in the Complaint on behalf of the citizens of the State of Georgia.

3.     Intervenor-Defendants admit the allegations of Paragraph 3, except to the extent that Paragraph 3 suggests that only Defendant Holder may defend a Section 5 declaratory judgment action in this Court.  Intervenor-Defendants aver that citizens of plaintiff jurisdictions frequently participate as parties in defense of Section 5 declaratory judgment actions.

4.     The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  If deemed to allege facts, Intervenor-Defendants admit the allegations in Paragraph 4 to the extent that they accurately quote portions of Section 5 of the Voting Rights Act, but deny that Paragraph 4 faithfully quotes the governing provisions of Section 5.  Specifically, Intervenor-Defendants aver that Paragraph 4 omits the statutory requirement that a proposed voting change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title* . . ." (emphasis added to omitted material).

5.     The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  If deemed to allege facts, Intervenor-Defendants admit the allegations in Paragraph 5.

6.      The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  If deemed to allege facts, Intervenor-Defendants admit the allegations in Paragraph 6 to the extent that Georgia is a covered jurisdiction for purposes of Section 5 pursuant to the determination of August 7, 1965 in 30 F.R. 9897.

7.      Intervenor-Defendants admit the allegations of Paragraph 7 to the extent that they describe the statutory basis asserted by Plaintiff for the claims presented in the Complaint and characterize Plaintiff's contentions.  Intervenor-Defendants deny that Plaintiff is prevented by Section 5 from enforcing federal laws relating to voter registration and verification.

8.      Intervenor-Defendants deny the allegations of Paragraph 8.  Intervenor-Defendants aver that an actual controversy exists between the parties only with respect to whether Plaintiff can meet its burden of proof on its Section 5 claim or whether, in the alternative, Plaintiff is entitled to a declaratory judgment and injunctive relief upon its constitutional claim.

9.   Intervenor-Defendants admit the allegations of Paragraph 9.

10.  Intervenor-Defendants admit the allegations of Paragraph 10.

### Verification Requirements under Federal Law

11.      Intervenor-Defendants admit the allegations of Paragraph 11 except to the extent that the allegations refer to "minimum election standards" while the preamble of the act refers to "minimum election *administration* standards" (emphasis added).

12.      The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  If deemed to allege facts, Intervenor-Defendants admit the allegations in Paragraph 12 to the extent that they accurately quote portions of the Help America Vote Act ("HAVA").  The allegations do not, however, quote other relevant sections of HAVA.

13.     The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  If deemed to allege facts, Intervenor-Defendants admit the allegations in Paragraph 13 to the extent that they accurately quote portions of HAVA.

14.     The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  If deemed to allege facts, Intervenor-Defendants admit the allegations in Paragraph 14 to the extent that they accurately quote portions of HAVA.

15.     The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  The *Schwier* consent decree and HAVA speak for themselves. If deemed to allege facts, Intervenor-Defendants admit the allegations in Paragraph 15 to the extent that they accurately cite *Schwier v. Cox* and accurately quote portions of HAVA.

16.     The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  The *Schwier* consent decree and HAVA speak for themselves. If deemed to allege facts, Intervenor-Defendants admit the allegations of Paragraph 16.

17.     The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  The *Schwier* consent decree and HAVA speak for themselves. If deemed to allege facts, upon information and belief Intervenor-Defendants deny that Georgia "collected full Social Security numbers from each registrant" prior to the *Schwier* decision.

### Communications with the Department of Justice

18.     Intervenor-Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 18.  Intervenor-Defendants deny the allegations of Paragraph 18 to the extent they contend that the procedures at issue in this action are "required under Section 303(a)(5)."

19.     Intervenor-Defendants admit the allegations in this paragraph to the extent that the Chief of the Voting Section of the Civil Rights Division at the United States Department of

Justice sent Georgia a letter dated April 23, 2007 concerning whether Georgia was "online through the HAVA verification program for matching the last four digits of social security numbers against the SSA database." Intervenor-Defendants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 19.

20.     Intervenor-Defendants admit the allegations in this paragraph to the extent that Georgia began performing record matching between the statewide voter registration database and the DDS database in or around June 2007, but deny the remainder of the allegations in Paragraph 20. Upon information and belief, Intervenor-Defendants aver that in September 2008 Georgia officials first directed county boards of registrars to prevent persons appearing on the citizenship "exceptions report" from voting.

21.     Intervenor-Defendants admit the allegations of Paragraph 21 to the extent that they describe aspects of the procedures Plaintiff identifies as the "Georgia HAVA Verification Process." Intervenor-Defendants deny that the allegations of Paragraph 21 provide a complete description of the proposed process. Intervenor-Defendants aver that the proposed uses of "exception list[s]" for which Plaintiff seeks Section 5 preclearance are not required by HAVA and that it is misleading to refer to those procedures as a component of "HAVA Verification." Intervenor-Defendants further aver that the citizenship matching and hearing procedures for which Plaintiff seeks Section 5 preclearance are not required by HAVA and that it is misleading to refer to those procedures as a component of "HAVA Verification."

22.     Intervenor-Defendants deny the allegations of Paragraph 22. Intervenor-Defendants aver that the October 8, 2008 letter from the Department of Justice to then-Secretary of State Karen Handel informed the State that "[b]ecause election officials exercise substantial discretion at many points in this process of attempting to verify voter registration information

5

and in acting upon the results of that process, these changes affecting voting are covered by the requirements of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c."

23.     Intervenor-Defendants deny the allegations of Paragraph 23. Intervenor-Defendants aver that on October 9, 2008, Jose Morales, a resident of Cherokee County, Georgia, brought a Section 5 enforcement action in the United States District Court for the Northern District of Georgia against then-Secretary of State Karen Handel, stating claims under Section 5 of the Voting Rights Act and Section 8 of the National Voter Registration Act, and that Mr. Morales was represented by attorneys including the Mexican-American Legal Defense and Educational Fund, the Voting Rights Project of the American Civil Liberties Union and the Lawyers' Committee for Civil Rights Under Law. Intervenor-Defendants further aver that the *Morales* Complaint was later amended to add plaintiffs and to state a claim under HAVA. Intervenor-Defendants further aver that the citizenship matching and hearing procedures that formed the basis of Mr. Morales' Section 5 claim were not and are not required by HAVA and that it is misleading to refer to those procedures as a component of "HAVA Verification."

24.     Upon information and belief, Intervenor-Defendants admit the allegations in this paragraph to the extent that the Chief of the Voting Section of the Civil Rights Division at the United States Department of Justice sent Georgia a letter dated October 10, 2008, concerning Georgia's Social Security Administration records matching.

25.     Intervenor-Defendants lack sufficient knowledge to admit or deny the allegations of Paragraph 25 with respect to assertions by the Department of Justice. Intervenor-Defendants admit the allegations of Paragraph 25 to the extent that a Section 5 submission by the Georgia Attorney General was made on October 14, 2008, which sought preclearance for certain voter registration procedures based upon matching of the Georgia statewide voter registration database

and the Georgia DDS database.  Intervenor-Defendants deny the remaining allegations of

Paragraph 25, specifically that the procedures identified in Plaintiff's Complaint as the "Georgia

HAVA Verification Process" were fully contained in the Georgia Attorney General's October

14, 2008 submission.

      26.     Intervenor-Defendants deny that the procedures identified in Plaintiff's Complaint

as the "Georgia HAVA Verification Process" were fully contained in the Georgia Attorney

General's October 14, 2008 submission but admit the remaining allegations of Paragraph 26.

      27.     Intervenor-Defendants admit the allegations of Paragraph 27 except to the extent

that this paragraph incorporates the term "temporary HAVA verification process."  Intervenor-

Defendants aver that the Morales Court described its Order as "temporary remedy for the lack of

preclearance, unless and until preclearance is obtained" and not as a "temporary HAVA

verification process" as alleged in Paragraph 27.

      28.     Intervenor-Defendants deny that the procedures identified in Plaintiff's Complaint

as the "Georgia HAVA Verification Process" were fully contained in the Georgia Attorney

General's October 14, 2008 submission but admit the remaining allegations of Paragraph 28.

      29.     Intervenor-Defendants admit the allegations of Paragraph 29.

      30.     The allegations in this paragraph contain statements of law and/or conclusions of

law to which no response is required.  If deemed to allege facts, Intervenor-Defendants admit

that the United States Attorney General interposed a Section 5 objection to the Georgia Attorney

General's submission on May 29, 2009, but deny the remaining allegations in Paragraph 30.

Intervenor-Defendants aver that this action is a *de novo* proceeding in which Plaintiff bears the

burden of proof without regard to the Section 5 administrative review process.

31.     Intervenor-Defendants lack sufficient information to admit or deny the allegations of Paragraph 31.  Intervenor-Defendants aver that Plaintiffs in the *Morales* litigation were aware that discussions occurred between the Department of Justice and the Georgia Attorney General with respect to the Section 5 submission but did not participate in those discussions.

32.     Intervenor-Defendants admit the allegations of this paragraph to the extent that the United States Department of Justice sent Georgia the letter dated June 16, 2009, attached as Exhibit 3 to Plaintiff's Complaint, but deny the remaining allegations of Paragraph 32.

33.     Intervenor-Defendants lack sufficient information to admit or deny the allegations of Paragraph 33.

34.     Intervenor-Defendants lack sufficient information to admit or deny the allegations of this paragraph to the extent that a revised process "took into account the issues specifically stated by DOJ during those discussions" but admit the remainder of the allegations of Paragraph 34.

35.     Intervenor-Defendants admit that on October 13, 2009, the Department of Justice denied the Georgia Attorney General's request for reconsideration of the May 29, 2009 objection, and identified a portion of Georgia's August 11, 2009 correspondence to be a new Section 5 submission.  Intervenor-Defendants lack sufficient information to admit or deny the allegations of this paragraph concerning what the Department of Justice had advised before October 13, 2009, and deny the remaining allegations of Paragraph 35.

36.     Intervenor-Defendants deny the allegations of Paragraph 36.

37.     Intervenor-Defendants admit the allegations of Paragraph 37.

38.     Intervenor-Defendants admit the allegations of Paragraph 38, but deny that the "Georgia HAVA Verification Process" was fully contained in the state's Section 5 submission.

39.     Intervenor-Defendants deny the allegations of Paragraph 39.

40.     Intervenor-Defendants lack sufficient information to admit or deny the allegations of Paragraph 40.

41.     The allegations in this paragraph are statements of law and/or conclusions of law to which no response is required.  The Court's June 15, 2010 order in the *Morales* case speaks for itself.  If deemed to allege facts, Intervenor-Defendants admit the allegations of Paragraph 41 to the extent that they distinguish between the citizenship-related procedures at issue in the *Morales* case and other procedures at issue in this action, and deny the remaining allegations of Paragraph 41.

## Expedited Consideration

42.     Intervenor-Defendants admit the allegations of Paragraph 42.

43.     Intervenor-Defendants admit the allegations of Paragraph 43.

44.     Intervenor-Defendants admit the allegations of Paragraph 44.

45.     Intervenor-Defendants admit the allegations of Paragraph 45 to the extent that they describe the relief sought by Plaintiff.  Intervenor-Defendants deny that Plaintiff is entitled to expedited consideration of its claims.  Intervenor-Defendants aver that Plaintiff has been dilatory both in seeking Section 5 preclearance from the Department of Justice and in bringing this action.  Intervenor-Defendants further aver that any expedited consideration of Plaintiff's Section 5 preclearance claim should not foreshorten the opportunity for full discovery and briefing of Plaintiff's constitutional claim.

**The Georgia HAVA Verification Process Sought to be Precleared**

46.     Intervenor-Defendants admit the allegations of Paragraph 46 to the extent that they describe the relief sought by Plaintiff and the procedures Plaintiff purports to implement in the future.  Intervenor-Defendants deny the remainder of the allegations of Paragraph 46.

47.     Intervenor-Defendants admit the allegations of Paragraph 47.

48.     Intervenor-Defendants admit the allegations of Paragraph 48 to the extent that they describe the relief sought by Plaintiff and the procedures Plaintiff purports to implement in the future, but deny that the procedures described in this paragraph are reasonably calculated to verify the identities of voter registration applicants.

49.     Intervenor-Defendants admit the allegations of Paragraph 49 to the extent that the procedures to which this paragraph refers do not on their face distinguish on the basis of race or color.  Intervenor-Defendants aver that the procedures to which this paragraph refers bear more heavily on racial and language minority citizens.

50.     Intervenor-Defendants admit the allegations of Paragraph 50 to the extent that they describe the procedures Plaintiff purports to implement in the future.

**Verification Process for Covered Applicants Who Provide a Georgia Driver's
License Number or Georgia DDS ID Card**

51.     Intervenor-Defendants admit the allegations of Paragraph 51 to the extent that they describe the procedures Plaintiff purports to implement in the future.  Intervenor-Defendants deny that any federal law requires Georgia to conduct a "citizenship status" match and aver that the decision to do so was and is entirely a discretionary choice on the part of Georgia state officials.

52.     Intervenor-Defendants admit the allegations of Paragraph 52 to the extent that they describe the procedures Plaintiff purports to implement in the future.  Intervenor-Defendants deny that any federal law requires Georgia to perform an "exact match" and aver that the decision to do so was and is entirely a discretionary choice on the part of Georgia state officials.

53.     Intervenor-Defendants admit the allegations of Paragraph 53 to the extent that they describe the procedures Plaintiff purports to implement in the future.  Intervenor-Defendants deny that any federal law requires Georgia to prepare an "exceptions report" and aver that the decision to do so was and is entirely a discretionary choice on the part of Georgia state officials.

54.     Intervenor-Defendants admit the allegations of Paragraph 54 to the extent that they describe the procedures Plaintiff purports to implement in the future.  Intervenor-Defendants deny that any federal law requires Georgia to provide an "exceptions report" to county boards of registrars and aver that the decision to do so was and is entirely a discretionary choice on the part of Georgia state officials.

**Verification Process for Covered Applicants Who Provide Only Last Four Digits of Social Security Number**

55.     Intervenor-Defendants admit the allegations of Paragraph 55 to the extent that they describe the procedures Plaintiff purports to implement in the future.

56.     Intervenor-Defendants admit the allegations of Paragraph 56 to the extent that they describe the procedures Plaintiff purports to implement in the future.

57.     Intervenor-Defendants admit the allegations of Paragraph 57 to the extent that they describe the procedures Plaintiff purports to implement in the future.

58.     Intervenor-Defendants admit the allegations of Paragraph 58 to the extent that they describe the procedures Plaintiff purports to implement in the future.  Intervenor-Defendants deny that any federal law requires Georgia to prepare an "exceptions report" and aver that the decision to do so was and is entirely a discretionary choice on the part of Georgia state officials.

59.     Intervenor-Defendants admit the allegations of Paragraph 59 to the extent that they describe the procedures Plaintiff purports to implement in the future.  Intervenor-Defendants deny that any federal law requires Georgia to provide an "exceptions report" to county boards of registrars or requires such a report to be used for any purpose; Intervenor-Defendants aver that the decision to do so was and is entirely a discretionary choice on the part of Georgia state officials.

**United States Citizenship Verification Process**

60.     Intervenor-Defendants admit the allegations of Paragraph 60 to the extent that they set forth Plaintiff's own description of the citizenship verification process for which Plaintiff seeks a declaratory judgment, and otherwise deny the remainder of the allegations in this paragraph.  Upon information and belief, including reference to the actual practices implemented by Georgia without Section 5 preclearance, Intervenor-Defendants aver that this paragraph is a materially incomplete description of the purported citizenship verification procedures that Georgia would employ if Section 5 preclearance were granted by this Court.

61.     Intervenor-Defendants admit the allegations of Paragraph 61 to the extent that they set forth Plaintiff's own description of the citizenship verification process for which Plaintiff seeks a declaratory judgment, and otherwise deny the remainder of the allegations in

this paragraph.  Intervenor-Defendants deny that O.C.G.A. 21-2-228 requires county boards of registrars to routinely conduct inquiries into the citizenship of voter registration applicants.

<u>**COUNT I – DECLARATORY RELIEF**</u>

62.     In response to this paragraph Intervenor-Defendants reincorporate by reference their responses to the allegations of Paragraphs 1 to 61.

63.     Intervenor-Defendants deny the allegations of Paragraph 63.

64.     Intervenor-Defendants deny the allegations of Paragraph 64.

65.     Intervenor-Defendants deny the allegations of Paragraph 65.  Intervenor-Defendants aver that Paragraph 65 omits the statutory requirement with respect to "denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title . . .*" (emphasis added to omitted material).

66.     Intervenor-Defendants deny the allegations of Paragraph 66.  Intervenor-Defendants aver that Paragraph 66 omits the statutory requirement with respect to "denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title . . .*" (emphasis added to omitted material).

67.     Intervenor-Defendants deny the allegations of Paragraph 67.

68.     Intervenor-Defendants admit the allegations of Paragraph 68 to the extent that the procedures to which this paragraph refers do not on their face distinguish on the basis of race or color.  Intervenor-Defendants aver that the procedures to which this paragraph refers bear disproportionately more heavily on racial and language minority citizens.

69.     Intervenor-Defendants deny the allegations of Paragraph 69.

70.     Intervenor-Defendants deny the allegations of Paragraph 70.

13

## COUNT II – DECLARATORY AND INJUNCTIVE RELIEF

71.     In response to this paragraph Intervenor-Defendants reincorporate by reference their responses to the allegations of Paragraphs 1 to 70.

72.     Intervenor-Defendants deny the allegations of Paragraph 72 except to the extent that it describes the relief sought by Plaintiff.  Intervenor-Defendants deny specifically that Plaintiff is entitled to the relief sought in Paragraph 72.

73.     Intervenor-Defendants admit the allegations of Paragraph 73.

74.     Intervenor-Defendants admit the allegations of Paragraph 74, except to the extent that Paragraph 74 characterizes conditions in 1982 by the phrase "even as late."

75.     Intervenor-Defendants deny the allegations of Paragraph 75, except that Intervenor-Defendant admits that the 2006 reauthorization of Section 4 of the Voting Rights Act maintained the pre-existing Section 4 coverage determinations based upon the 1964, 1968, and 1972 presidential elections, and that Georgia consequently continued to be a covered jurisdiction.

76.     Intervenor-Defendants deny the allegations of Paragraph 76.

77.     Intervenor-Defendants deny the allegations of Paragraph 77.

78.     Intervenor-Defendants deny the allegations of Paragraph 78.

79.     Intervenor-Defendants deny the allegations of Paragraph 79, except that Intervenor-Defendants admit that Section 2 is a permanent provision of the Voting Rights Act, that Section 2 is nationwide in scope, and that Section 2 permits challenges to certain types of voting practices and procedures.  Intervenor-Defendants aver that the Supreme Court has found Section 2 and Section 5 to "combat different evils and, accordingly, to impose very different duties upon the States."  *Reno v. Bossier Parish School Board,* 520 U.S. 471, 477 (1997).

Intervenor-Defendants aver that Section 2 is not an adequate substitute for Section 5 with respect to the State of Georgia.

80.     Intervenor-Defendants deny the allegations of Paragraph 80.

81.     Intervenor-Defendants deny the allegations of Paragraph 81.

82.     Intervenor-Defendants deny the allegations of Paragraph 82.

83.     Intervenor-Defendants deny the allegations of Paragraph 83.  Intervenor-Defendants specifically deny that Section 5 harms or has harmed minority voters in any way. Intervenor-Defendants aver that Section 5 has been and continues to be a crucial protection for minority citizens against voting discrimination in Georgia.

84.     Intervenor-Defendants deny the allegations of Paragraph 84.  Intervenor-Defendants specifically deny that Section 5 prevents Georgia from conducting any federally-mandated activities with respect to HAVA.  Intervenor-Defendants aver that Section 5 requires preclearance only for those voting practices and procedures that result from the exercise of discretion by Georgia and its officials.

85.     Intervenor-Defendants deny the allegations of Paragraph 85.

86.     Intervenor-Defendants admit the allegation of Paragraph 86 that Georgia is unable to change the requirements of HAVA that applicants be verified and deny the remainder of the allegations of this paragraph.

87.     Intervenor-Defendants admit the allegations of Paragraph 87 but aver that this paragraph fails to identify numerous additional reasons for which bailout would be denied should it be sought by Georgia.

88.     Intervenor-Defendants lack sufficient knowledge to admit or deny the allegations of Paragraph 88 without identification of the classes of governmental units purported to be enumerated by this paragraph.

89.     Intervenor-Defendants lack sufficient knowledge to deny or admit the allegations of Paragraph 89 without identification of the classes of governmental units to which this paragraph refers.  Intervenor-Defendants deny the allegations of this paragraph with respect to any voting practice or procedure enacted by the Georgia Legislature, signed into effect by the Governor, or carried out at the direction of the Office of the Georgia Secretary of State. Intervenor-Defendants aver that a substantial portion of the Section 5 objections and other voting rights violations in Georgia have concerned election practices and procedures for counties and county school boards, which must be enacted by the Georgia Legislature and signed into effect by the Governor of Georgia.  Intervenor-Defendants further aver that the "exception" lists which Plaintiff proposes to distribute to county registrars (see Pars. 54, 59 and 61) are to be used by county election officials at the specific direction of the Georgia Secretary of State.

90.     Intervenor-Defendants deny the allegations of Paragraph 90.  Intervenor-Defendants aver that in the absence of Section 5 it is highly likely that minority citizens in Georgia will be subjected to intentional discrimination by state and local officials in the enactment and administration of new voting practices and procedures.

91.     Intervenor-Defendants deny the allegations of Paragraph 91.  Intervenor-Defendants aver that in the absence of Section 5 it is highly likely that minority citizens in Georgia will be subjected to intentional discrimination by state and local officials in the enactment and administration of new voting practices and procedures.

Respectfully submitted,

_____/s/_Jon Greenbaum_____

Jon Greenbaum (D.C. Bar No. 489887)
Robert A. Kengle
Mark A. Posner (D.C. Bar No. 457833)
jgreenbaum@lawyerscommittee.org
bkengle@lawyerscommittee.org
mposner@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1401 New York Avenue, NW
Suite 400
Washington, D.C. 20005
(202) 662-8315 (phone)
(202) 628-2858 (fax)

_____/s/__Laughlin McDonald_____

Laughlin McDonald
Meredith Bell-Platts
(Application pending)
lmcdonald@aclu.org
mbell@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, INC.
230 Peachtree Street, NW
Suite 1440
Atlanta, GA  30303-1227
(404) 523-2721 (phone)
(404) 653-0331 (fax)

Arthur B. Spitzer (D.C. Bar. No. 235960)
artspitzer@aol.com
AMERICAN CIVIL LIBERTIES UNION OF THE
NATION'S CAPITAL
1400 20th Street, N.W., Suite 119
Washington, DC 20036
(202) 457-0800 (phone)
(202) 452-1868 (fax)

17

Chara Fisher Jackson
cfjackson@acluga.org
ACLU OF GEORGIA
1900 The Exchange, Suite 425
Atlanta, GA 30339
(770) 303-8111

*Attorneys for Applicant-Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2010, the foregoing document was filed with the Clerk of this Court pursuant to Local Rule 7(j).  I further certify that on this 7th day July, 2010, I caused to be served a copy of the foregoing through electronic mail to the following:

| | |
|---|---|
| Anne W. Lewis (Georgia Bar No. 737490) | Attorney General Eric H. Holder, Jr. |
| Frank B. Strickland (Georgia Bar No. 687600) | U.S. Department of Justice |
| Bryan P. Tyson (Georgia Bar No. 515411) | 950 Pennsylvania Ave. NW |
| STRICKLAND BROCKINGTON LEWIS LLP | Washington, DC 20530 |
| Midtown Proscenium Suite 2200 | Fax: (202) 307-3961 |
| 1170 Peachtree Street, NE | |
| Atlanta, Georgia 30309 | T. Christian Herren Jr. |
| Tel: (678) 347-2200 | Brian Heffernan |
| Fax: (678) 347-2210 | Civil Rights Division, Voting Section |
| | U.S. Department of Justice |
| | 950 Pennsylvania Avenue, N.W. |
| | NWB – Room 7264 |
| | Washington, D.C. 20530 |
| | Tel.: (202) 305-1734 |
| | Fax: (202) 307-3961 |

*Counsel for Plaintiff*                    *Counsel for Defendant*


/s/ Jon Greenbaum