# Attachment A

# IN THE UNITED STATE DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 10-CV-1062 |
| | § | |
| ERIC H. HOLDER, JR., | § | Three-Judge Panel: ESH-TBG-HHK |
| ATTORNEY GENERAL OF THE | § | |
| UNITED STATES, | § | |
| | § | |
| *Defendant*. | § | |

## GEORGIA ASSOCIATION OF LATINO ELECTED OFFICIALS' AMENDED MOTION TO INTERVENE AS DEFENDANT AND MEMORANDUM OF LAW IN SUPPORT

Nina Perales
**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
110 Broadway, Suite 300
San Antonio, TX 78205
Tel:  (210) 224-5476
Fax:  (210) 224-5382

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION...................................................................................................................1

DESCRIPTION OF MOVANT...............................................................................................2

ARGUMENT...........................................................................................................................3

    I.     GALEO IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT......................................................................................................................3

          A.     GALEO's Motion to Intervene is Timely............................................................4

          B.     GALEO has a Right to Intervene Under the Voting Rights Act.............................................................................4

          C.     GALEO Seeks to Vindicate a Protective Interest.............................................5

                1.     GALEO's Interests Would be Impaired if Intervention were Denied..................................................................6

                2.     The Existing Defendant Will Not Adequately Represent GALEO's Interests............................................................7

    II.    GALEO IS ENTITLED TO PERMISSIVE INTERVENTION .................................9

CONCLUSION......................................................................................................................11

CERTIFICATE OF CONFERENCE......................................................................................12

CERTIFICATE OF SERVICE...............................................................................................13

## TABLE OF AUTHORITIES

## CASES

*Admiral Ins. Co. v. Nat'l Cas. Co.*, 137 F.R.D. 176 (D.D.C. 1991)..................................................4

*Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994) ....................................................10

*Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982) ..........................................................................6

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989) ...................................................................6

*Dimond v. Dist. of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) .....................................................7, 8

*Fund for Animals Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003).................................................7, 8

*Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981) ..........................................................................5

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980) ........................................................8

*Georgia v. Ashcroft*, 539 U.S. 461 (2003) .......................................................................................4

*Hodgson v. United Mine Workers of Am.*, 473 F.2d 118 (D.C. Cir. 1988) .....................................5

*Johnson v. Mortham*, 915 F. Supp. 1529 (N.D. Fla. 1995) ..........................................................5, 6

*League of United Latin Am. Citizens, Council No. 4434 v.
Clements*, 999 F.2d 831 (5th Cir. 1993) ...........................................................................................6

*Morales v. Handel*, No. 08-CV-3172 (N.D. Ga. Filed Oct. 9, 2008)...........................................2, 3

*Meek v. Metro. Dade County, Fla.*, 985 F.2d 1471 (11th Cir. 1993) ...............................................6

*NAACP v. New York*, 413 U.S. 345 (1973) .....................................................................................5

*Natural Res. Def. Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977) ..........................................8, 9

*Natural Res. Def. Council v. EPA*, 99 F.R.D. 607 (D.D.C. 1983).....................................................5

*Nw. Austin Mun. Utility Dist. No. One v. Mukasey,* 573 F. Supp. 2d (D.D.C. 2008) ..................8, 9

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967).................................................................3, 5, 6, 7

*People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) ...................8

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) .......................................................7

*United States v. Am. Tel. & Tel. Co.*,
642 F.2d 1285 (D.C. Cir. 1980) ......................................................................................................4, 7

**RULES**

Fed. R. Civ. P. 24 .....................................................................................................................*passim*

**STATUTES**

28 U.S.C. § 2201 ................................................................................................................................1

42 U.S.C. § 1973 .........................................................................................................................*passim*

**MISCELLANEOUS**

C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1909 (1986) .................................8

7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
PROCEDURE § 1904, 1909 (1986) .......................................................................................................10

# INTRODUCTION

The Georgia Association of Latino Elected Officials ("GALEO") respectfully moves to intervene in this case as defendant in order to protect the rights of its members under the U.S. Constitution and the federal Voting Rights Act, 42 U.S.C. § 1973, *et seq.*

On June 21, 2010, Plaintiff State of Georgia filed a Complaint for declaratory relief, pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c ("Section 5"), and 28 U.S.C. § 2201, for preclearance of proposed voter registration procedures – including the use of a database operated by the Georgia Department of Driver Services ("DDS") to verify voter registration information ("DDS matching procedure").  In the alternative, Plaintiff seeks a declaratory judgment that continued enforcement of Section 5 is unconstitutional.

The State of Georgia filed this action following a determination by the U.S. Department of Justice ("DOJ")  that the DDS matching procedure  – which Georgia had originally implemented in violation of Section 5 of the Voting Rights Act – was flawed with respect to verification of U.S. citizenship, and that "[t]he impact of these errors falls disproportionately on minority voters."  DOJ Letter, dated May 29, 2009, to the Attorney General of Georgia attached to Plaintiff's Complaint as Exhibit 2 (finding that Georgia's "flawed system frequently subjects a disproportionate number of African-American, Asian, and/or Hispanic voters to additional and, more importantly, erroneous burdens on the right to register to vote.  These burdens are real, are substantial, and are retrogressive for minority voters.").  DOJ concluded, following an analysis of Georgia's unprecleared implementation of the DDS matching procedure in 2008 and 2009, that close to half of the voter registrants who were erroneously 'flagged" as non-citizens were in fact naturalized U.S. citizens.  *Id.*  DOJ also concluded

that "Hispanic[s] are more than twice as likely to appear on the list [of flagged non-citizens] as are white applicants." *Id.*

Notably, proposed Defendant-Intervenor GALEO filed a Section 5 enforcement action against Georgia in order to enjoin the illegal implementation of its discriminatory DDS matching procedure, and to protect the rights of its members to vote without discrimination. *See Morales v. Handel*, No. 08-CV-3172 (N.D. Ga. filed Oct. 9, 2008). GALEO seeks to intervene in this preclearance lawsuit to continue its effort to ensure that the protections of Section 5 are afforded to its members and all Georgians.

## DESCRIPTION OF MOVANT

Proposed Defendant-Intervenor GALEO is a nonprofit and non-partisan organization, under Section 501(c)(6) of the Internal Revenue Code, founded in Georgia. It was established to increase representation of Latino elected and appointed officials, to address proactively the issues and needs of the Latino community, and to engage the Latino community in the democratic and political process across the State of Georgia. *See* GALEO's Mission Statement, *available at* http://www.galeo.org/about_galeo.php.

A core component of GALEO's mission is to increase registration and voting by eligible Latino citizens. To that end, GALEO engages in extensive voter education campaigns, including the following: (1) television, radio and print media Spanish public service announcements; (2) widespread distribution of literature regarding voter registration and other voting-related issues (in both English and Spanish); (3) administration of a voter information hotline and website (in both English and Spanish); (4) provision of electronic access to legislative voting records; and (5) voter mobilization efforts that include "get out to

2

vote" phone calls and transporting voters to the polls. *See id.*

GALEO's members are residents and registered voters of Georgia. GALEO's membership includes Latinos who seek to preserve the protections of the Voting Rights Act where they live and work. GALEO served as a plaintiff in *Morales*, a successful action against the Georgia Secretary of State enforcing Section 5 of the Voting Rights Act. No. 08-CV-3172 (N.D. Ga. filed Oct. 9, 2008) (enjoining Georgia's implementation of a system that verifies information contained on voter registration applications by matching this information against databases operated by the DDS).

Plaintiff in this case seeks declaratory relief that, if granted, would affect the remedy secured by proposed Defendant–Intervenor GALEO in *Morales*. Plaintiff also seeks declaratory relief that will remove the protections of the Voting Rights Act from voter registration applicants in the State of Georgia. Thus, Plaintiff's complaint raises serious questions of law that are vital to the interests of GALEO and its members.

## ARGUMENT

### I.   GALEO IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Upon timely application, anyone shall be permitted to intervene in an action when:

> (1) a statute of the United States confers an unconditional right to intervene; or when (2) the applicant claims an interest relating to the property or transaction that is the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest, unless the applicant's interest is represented adequately by existing parties.

Fed. R. Civ. P. 24(a). As stated in *Nuesse v. Camp*, Rule 24(a) was "designed to liberalize the right to intervene in federal actions." 385 F.2d 694, 701 (D.C. Cir. 1967). Based on the facts set out above,

3

and for the reasons that follow, GALEO fully meets each prong of the test for intervention as a matter of right under Fed. R. Civ. P. 24(a), and, therefore, GALEO's motion to intervene should be granted.

### A. GALEO's Motion to Intervene is Timely

In determining whether a motion for intervention is timely, this Court must consider "all of the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving [the Applicant's] rights, and the probability of prejudice to those already parties in the case." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).

Plaintiff filed its Complaint in this case on June 21, 2010. Defendant has not yet filed an answer. As such, no discovery has taken place and no motions are pending before the Court. Because of the promptness of GALEO' motion for intervention, the existing parties will not be prejudiced if the Court permits intervention, no additional discovery will be necessary, and the proceedings will not be delayed. GALEO's intervention in these proceedings is, therefore, timely. *See, e.g.*, *Admiral Ins. Co. v. Nat'l. Cas. Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991) (motion to intervene was timely where "[t]he major substantive issues . . . have not yet been argued or resolved, and the movants filed their motions promptly").

### B. GALEO has a Right to Intervene Under the Voting Rights Act

It is well established that Section 5 preclearance lawsuits are governed by the Federal Rules of Civil Procedure "and the statute by its terms does not bar private parties from intervening." *Georgia v. Ashcroft*, 539 U.S. 461, 476 (2003) (in a judicial preclearance action filed by the State of Georgia, the U.S. Supreme Court held that private parties may intervene in § 5 actions when they meet the

4

requirements of Rule 24 and that the district court did not abuse its discretion in granting the motion to intervene) (citing *NAACP v. New York*, 413 U.S. 345, 365 (1973)).

### C.   GALEO Seeks to Vindicate a Protectable Interest

GALEO also meets the test set out in Rule 24 for intervention as of right because GALEO has a protectable interest in the subject matter of the litigation that will be impaired by an adverse decision. In the D.C. Circuit, the requisite interest for intervention "has been interpreted in broad terms." *Natural Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983); *see also Foster v. Gueroy*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (quoting *Nuesse*, 385 F.2d at 700) (interest requirement is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process"); *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1988) ("[t]he right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard").

GALEO has a strong and legally cognizable interest in this action. As described above, GALEO is an organization whose mission includes voter registration and mobilization. *See* GALEO's Mission Statement, *available at* http://www.galeo.org/about_galeo.php. In addition, GALEO's membership includes Latino registered voters and residents in Georgia who seek to preserve the protections of the Voting Rights Act where they live and vote.

In voting rights cases, courts routinely allow intervention by minority voters, finding that registered voters have a protectable interest that warrants intervention. *See Johnson v. Mortham*, 915 F. Supp. 1529, 1535-36 (N.D. Fla. 1995) (allowing registered voters to intervene in suit challenging

5

constitutionality of a redistricting plan as a remedy for vote dilution); *Meek v. Metro. Dade County, Fla.*, 985 F.2d 1471, 1488 (11th Cir. 1993) (reversing district court's denial of intervention filed by registered voters); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 837 (5th Cir. 1993) (in challenge to single-district system of electing state trial judges in Texas, "the district court granted the motions to intervene of the Houston Lawyers' Association, the Legislative Black Caucus, and two" individuals). Similarly, organizations are permitted to intervene in Section 5 preclearance actions. *See Busbee v. Smith*, 549 F. Supp. 494, 517 (D.D.C. 1982) (Section 5 preclearance action featuring defendant intervenor).

Moreover, GALEO should not be required to wait until the conclusion of the litigation to decide whether its interests, and those of its members, require intervention. Federal courts have recognized that those seeking intervention would face a "practical disadvantage" in asserting their rights once a court has acted. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989).

### 1. GALEO's Interests Would Be Impaired If Intervention Were Denied

GALEO is "so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest[.]" Fed. R. Civ. P. 24(a)(2). The Advisory Committe Notes for the 1966 amendments to Rule 24(a) are instructive: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Committee's Note to 1966 Amendments. The D.C. Circuit has also noted that the emphasis in the rule is on "practical disadvantage" and was "designed to liberalize the right to intervene in federal actions." *Nuesse*, 385 F.2d at 701-02.

Plaintiff seeks to implement a discriminatory DDS matching procedure that is the subject of an

objection interposed by the DOJ.  *See* Complaint (requesting preclearance of Georgia's discriminatory DDS matching procedure).  Therefore, the disposition of this case in Plaintiff's favor would substantially affect the conditions under which GALEO fulfills its mission of voter education and mobilization, and also substantially affect the manner in which GALEO's members register or re-register to vote.

### 2. The Existing Defendant Will Not Adequately Represent GALEO's Interests

The burden under this prong is "satisfied if [the Applicant] shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).  Courts will deem representation inadequate where, as here, the interests of the party seeking intervention and those of the existing parties are "different," even if they are not "wholly 'adverse,'" *Nuesse*, 385 F.2d at 703, or where they are "similar but not identical," *Am. Tel. & Tel. Co.*, 642 F.2d at 1293.  Even in a situation where the parties may share broad strategic objectives, they may have different interests or goals with respect to particular issues and those differences can be the basis to support intervention.  *Id.*

The D.C. Circuit has frequently recognized that federal governmental representation of private intervenor's interests may be inadequate.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (reversing district court's denial of intervention and finding that proposed intervenors' "interests plainly are not adequately represented by the federal defendants"); *see also Dimond v. Dist. of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) (same).  For example, in *Dimond*, the court held that because the government was responsible for representing a broad range of public interests rather than the more narrow interests of intervenors, the "application for intervention . . . falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of

the interests of private parties in certain circumstances." 792 F.2d at 192; *see, e.g.*, *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977) (government does not adequately represent private organizations because intervenors' interests are different); *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993); *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980) (granting individual aggrieved party's motion to intervene in order to protect their personal interests, which may at times be in conflict with those of the EEOC). Moreover, the burden is on those opposing the intervention to show that representation of proposed intervenor's interests will be sufficient. *See* C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1909 (1986).

This is true even when the defendant is a federal agency charged with representing the interests of the American people and responsible for enforcing the federal law being litigated in the case. *See Fund for Animals*, 322 F.3d at 736. The same rationale applies here. Although the federal government and GALEO may both agree that the DDS matching procedure is discriminatory and may not be entitled to Section 5 preclearance, GALEO may have a different perspective than Defendant on the facts surrounding the impact of the DDS matching procedure on the Latino community. The presence of such differences – not uncommon between minority voters and the government – has led courts to grant numerous intervention motions in Voting Rights Act cases. *Nw. Austin Mun. Utility Dist. No. One v. Mukasey*, 573 F. Supp. 2d 221 (D.D.C. 2008) (noting that "[s]everal parties sought and received permission to intervene as defendants," including "the Texas State Conference of NAACP Branches, the Austin Branch of the NAACP, [and] People for the American Way") *rev'd and remanded on other grounds*

8

129 S. Ct. 2504 (2009).

GALEO has a unique and particularized interest in defending the voting rights of Latinos in Georgia. In addition, GALEO has a unique experience in monitoring, indentifying and reporting obstacles to voting confronted by Latino voter registrants and voters. Minority litigants and the federal government have frequently differed on the proper legal analysis and standard of proof applicable to cases arising under the Voting Rights Act. For this reason, GALEO seeks to participate in this case to provide a strenuous defense of the protections afforded by the Voting Rights Act. The "more narrow and focused" interest of GALEO would "serve as a vigorous and helpful supplement to [the] defense." *Costle*, 561 F.2d at 912-13. The interests of GALEO and its members are too vital for them to be relegated to the sidelines in this litigation.

## II.     GALEO IS ENTITLED TO PERMISSIVE INTERVENTION

Should the Court determine that GALEO is not entitled to intervene as a matter of right, GALEO urges the Court to exercise its discretion and allow GALEO to intervene under Fed. R. Civ. P. Rule 24(b). Fed. R. Civ. P. 24(b) governs permissive intervention and provides:

> Upon timely application, anyone may be permitted to intervene in an action (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).

9

The D.C. Circuit has recognized that permissive intervention may be granted in the court's discretion if: (1) the motion is timely; (2) the proposed intervenor's claim or defense has a question of law or fact in common with the existing action; and (3) intervention will not delay or prejudice the adjudication of the rights of the original parties. *See Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994). Similar to the burden under Rule 24(a), permissive intervention is to be granted liberally. *See* 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1904 (1986).

Rule 24(b) requires the Court to consider whether permissive intervention would cause undue delay or would prejudice adjudication of the right of the original parties. In this instance, as discussed above, there will be neither prejudice nor undue delay. First, GALEO's motion is timely. *See* Part I-A, *supra*. Second, GALEO's defenses will share substantial questions of law and fact with the main action. Third, as discussed above, intervention will not create delay or prejudice to the parties. Therefore, at a minimum, GALEO should be granted permissive intervention.

## **CONCLUSION**

For the foregoing reasons, GALEO respectfully requests that this Court grant its Motion to intervene.

DATED: July 16, 2010          Respectfully submitted,

   /s/ Nina Perales
NINA PERALES
District of Columbia Bar No. TX0040
MEXICAN AMERICAN LEGAL DEFENSE &
AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, Texas 78205
(210) 224-5476 (telephone)
(210) 224-5382 (facsimile)
nperales@maldef.org

## **CERTIFICATE OF CONFERENCE**

Counsel for Movant GALEO conferred with Defendant's counsel on July 13, 2010, concerning this motion to intervene, and Defendant does not oppose permissive intervention. Counsel for Movant GALEO conferred with Plaintiff's counsel on July 14, 2010, and Plaintiff did not oppose GALEO's motion to intervene. On July 16, 2010, counsel for GALEO conferred with Plaintiff's counsel on this amended motion, and Plaintiff does not oppose permissive intervention, but Plaintiff now opposes intervention as a matter of right.

/s/ Nina Perales
Nina Perales

## CERTIFICATE OF SERVICE

I, Nina Perales, hereby certify that on July 16, 2010, I caused to be served a copy of the foregoing through the Court's CM/ECF filing system to counsel of record.

/s/ Nina Perales
Nina Perales