# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------- X
State of Georgia,                            :
                                             :
            Plaintiff,                       :
                                             :
       v.                                    :
                                             :
Eric H. Holder, Jr.,                         :        No. 10 Civ 1062 (ESH-HHK)
in his official capacity as                  :
Attorney General of the United States,       :
                                             :
            Defendant,                       :
                                             :
       and                                   :
                                             :
Marvin Lim; Organization of Chinese          :
Americans; Asian American Legal              :
Advocacy Center,                             :
                                             :
            Applicants to Intervene.         :
-------------------------------------------- X
```

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

I.    **INTRODUCTION**

The State of Georgia ("Georgia") seeks declaratory relief pursuant to

Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c ("Section 5") on two

alternative grounds. First, Georgia contends that a voter verification process that matches

prospective voter information with Georgia Department of Motor Vehicles records to

confirm, among other things, United States citizenship status (the "Verification Process")

does not have the purpose or effect of denying or abridging the right to vote on account

of race or color, and should, therefore, be approved pursuant to Section 5. In the

1

alternative, Georgia seeks to challenge the constitutionality of Section 5 and to enjoin its continued enforcement.

Pursuant to the Fourteenth Amendment to the United States Constitution, Congress enacted the Voting Rights Act to ensure that no citizen would be denied access to the political process on account of race or color.  The Voting Rights Act of 1965 (the "Act") provides that  "[n]o voting qualification or prerequisite to voting…shall be imposed or applied by any State. . .which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color. . . ."

Section 5 of the Act, 42 U.S.C. § 1973c, is as an enforcement provision designed to protect the rights set forth in the Act.  Under Section 5, if a state passes any "voting qualification or prerequisite to voting … with respect to voting different from that in force on November 1, 1964. . ." the state must seek a declaratory judgment in the United States District Court for the District of Columbia or submit the proposed legislation to the Attorney General for review.  The Department of Justice denied Georgia preclearance; as such, Georgia initiated this action to obtain preclearance (the "Preclearance Action") prior to placing its voter verification procedure into effect.[1]

The Asian American Legal Advocacy Center of Georgia ("AALAC-GA"), the Organization of Chinese Americans ("OCA") Georgia Chapter ("OCA-GA") and

---

[1]   States covered under the Act must initiate these prequalification or preclearance proceedings prior to placing new voting laws in effect.  *See, e.g., City of Rome v. United States*, 446 U.S. 156, 183 n.18 (1980)(holding the state seeking approval of a change in voting law has the burden of proving by a preponderance of the evidence that the change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color"); *Pleasant Grove v. United States*, 479 U.S. 462, 467-68 (1987)("Congress intended the preclearance provisions of the Voting Rights Act to be given the broadest possible scope and to reach any state enactment which alters the election law of a covered State in even a minor way.")(internal citations and quotations omitted).

Marvin Lim have direct, substantial and legally protectable interests in this litigation. OCA-GA, AALAC-GA and Mr. Lim all seek to intervene as of right or permissively.

Marvin Lim, who was born in the Philippines, is a 24-year-old graduate student at Georgia State University and resident of Georgia. Mr. Lim renewed his Georgia driver's license in April 2007. Two months later, in June 2007, he became a naturalized United States citizen. He registered to vote in Georgia in August 2007 and received his precinct card in September 2007. Upon contacting the Gwinnett County Elections Department for an absentee ballot application on October 2, 2008, Mr. Lim discovered that he had been flagged as a non-citizen.

AALAC-GA seeks to protect the voting rights of Asian-Pacific Americans living in Georgia. AALAC-GA is the first non-profit law center focused on Asian Americans, Pacific Islanders and Asian-ethnic refugees living in the Southeast ("Asian Americans"). AALAC-GA's mission is to protect and promote the civil, social and economic rights of Asian Americans in Georgia through public policy, community organizing and leadership development. AALAC-GA was formed in the spring of 2010 in response to the growing population of Asian American voters in Georgia. The Asian American population in Georgia has tripled over the past two decades and makes up the second fastest growing Asian American community in the United States. As such, AALAC-GA focuses on protecting the legal rights of Asian Americans especially in areas of Georgia with a high concentration of Asian Americans. AALAC-GA works to achieve a community in which individuals are fully empowered, active in civic life and work together to promote equity and fair treatment for all of its members. As such, AALAC-GA believes that the only sustainable way to effect change is for Asian

Americans to achieve full civic integration and work together on policies that impact Asian American jobs, healthcare, social welfare and voting power.

OCA-GA seeks to intervene to protect the rights and interests of Chinese Americans living in Georgia. This case is of particular importance to OCA. Founded in 1973, OCA is a national membership organization dedicated to advancing the social, political and economic well-being of Asian Americans. It focuses on critical issues affecting Asian Americans, including but not limited to civic participation, voting rights, economic justice for workers, language access to services, census policy, affirmative action, youth rights and educational equity, housing and environmental justice and the elimination of anti-Asian violence, police misconduct and human trafficking. OCA has more than 80 chapters and affiliates across the nation, including in Georgia. Specifically, OCA–GA was founded in 1983; it aims to promote the general welfare of Chinese Americans and other Asian Americans in Georgia. Due to the growing Asian American population in Georgia and Metro Atlanta in particular, OCA-GA represents the interests of thousands of Asian Americans across the state. As such, OCA-GA is an active participant of the Asian/Pacific American Council of Georgia ("APAC") and often works to maintain and improve the cultural, political, educational and general welfare of all Asian-Pacific Americans living in Georgia.

## I.     INTERVENTION IS WARRANTED EITHER AS OF RIGHT OR PERMISSIVELY

The intervention of AALAC-GA, Mr. Lim and OCA-GA (collectively "Applicants") in this action is appropriate. Intervention in Section 5 preclearance actions is governed by Federal Rule of Civil Procedure 24. *See Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003); *see also NAACP v. New York*, 413 U.S. 345, 365 (1973). Rule 24 sets

4

forth the parameters for mandatory and permissive intervention.  According to Rule 24(a),

> [o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24(b)(1) provides that,

> [o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

As a threshold matter, Applicants' intervention is timely.  The timeliness requirement generally turns on whether intervention would prejudice the existing litigants in the dispute.  *See Akiachak Native Cmty. v. U.S. Dep't. of Interior*, 584 F. Supp. 2d 1 (D.D.C. 2008)("[T]he critical factor is whether any delay in moving for intervention will prejudice the existing parties to the case.").  This Court, in particular, has allowed intervention under similar circumstances or even when intervention occurred much later in a dispute.  *See, e.g., Convertino v. U.S. Dep't. of Justice*, 674 F. Supp. 2d 97, 108 (noting intervention was timely as discovery was still ongoing); *see also Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 260 F.R.D. 1, 5 (D.D.C. 2009) (intervention was timely even though motion was filed 15 months after commencement of the litigation, as discovery had not yet begun and intervenor had a pecuniary interest in the subject of the action and the action might impair its ability to protect its interest).

5

On June 22, 2010, Georgia filed its complaint; subsequently, on July 7, 2010, the Intervenor-Defendants Tyrone Brooks *et al.*, filed an answer with this Court. The parties conferred regarding scheduling on July 9 and this Court entered a scheduling order dated July 12. This litigation is, thus, still in its preliminary stages. Discovery has not yet commenced. Nor has this Court determined any substantive matter. The litigation is no longer set to progress at the pace originally requested by Georgia.[2] Intervention would not delay this litigation.

Likewise, Georgia would not be prejudiced by the addition of the Applicants given the nature of this litigation. The public interests involved in this type of litigation are well documented. Georgia is presumably aware that minority groups have a particularized stake in the Court's determination. Hence, no significant prejudice, if any, would result from Applicants' intervention.

### A. <u>Intervention As of Right Should be Granted</u>

Rule 24(a)(2) establishes three prerequisites for intervention as of right: (1) an adequate interest, (2) a possible impairment of that interest and (3) a lack of adequate representation of that interest by existing parties. *See Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.D.C. 1986)(citing *Envtl. Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 739 (D.C. Cir. 1979)).

---

[2]   Georgia initially requested that this Court issue orders and convene conferences "as may be necessary in an expedited basis to ensure that discovery is taken as quickly as possible and to ensure that a trial on the merits is had on the earliest possible date so that the State of Georgia can proceed in an orderly fashion in the conduct of elections and in verifying the information contained in new voter registration applications...." *See* Complaint at 26, Georgia v. Holder, No. 1:10-cv-01062 (D.D.C. June 22, 2010). The scheduling order however conveyed that this Court is not proceeding as initially requested by Georgia. *See* Scheduling Order, Georgia v. Holder, No. 1:10-cv-01062 (D.D.C. June 22, 2010).

*(1) Adequate Interest and Impairment*

Under Rule 24(a)(2), an applicant must have an interest "relating to the property or transaction which is the subject of the action that is significantly protectable." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). Although there is no bright-line test for what constitutes an "adequate interest" or one that is "significantly protectable," the goal of the interest requirement is "to dispose of lawsuits by involving as many concerned parties as is compatible with efficiency and due process." *See Nuesse v. Camp,* 385 F.2d 694, 699 (D.C. Cir. 1967); *see also Kleissler*, 157 F.3d at 969.

Although an "interest requirement" determination is largely dependent upon the facts, one can look to the Act and applicable jurisprudence for guidance. The Act provides for broad enforcement of its provisions. *See Allen v. State Bd. of Elections*, 393 U.S. 544, 557 (1969)("It is consistent with the broad purpose of the Act to allow the individual citizen standing to insure that his city or county government complies with the § 5 approval requirements."). Pursuant to Section 5 of the Act, private citizens have an implied right of action to seek enforcement of the Act. *Id.* at 557. This right is consistent with the purpose of the Act to grant individual citizens standing to bring suits to ensure that the locality complies with the requirements of Section 5 of the Act. *Id.* The United States Supreme Court stated that "[t]he achievement of the Act's laudable goal could be severely hampered … if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General." *Id.* at 556-557. Thus, the Act itself impliedly encourages intervention and enforcement by private litigants.

Federal courts have been liberal in granting intervention in voting rights cases. For example, in *Georgia v. Ashcroft*, 539 U.S. at 477 (2003), the United States

7

Supreme Court found that the D.C. District Court did not abuse its discretion in allowing

four African American citizens of Georgia to intervene in a judicial preclearance

proceeding. *See id.* ("Private parties may intervene in § 5 actions assuming they meet the

requirements of Rule 24. . . ."). Likewise, in *City of Port Arthur v. United States*, the

D.C. District Court allowed four African American residents of Port Arthur to intervene

in action brought pursuant to Section 5 of the Act. *See City of Port Arthur v. United

States*, 517 F. Supp. 987, 991 n.2 (D.D.C. 1981), *aff'd,* 459 U.S. 159 (1982)("adequate

interest" requirement presents a relatively low hurdle for intervention, where the

applicants are members of the class of persons the Act was designed to protect—court

allowed intervention where the applicants were ethnic minorities, who were citizens of

the State or locality proposing the legislation).

       This court addressed the "interest requirement" in *County Council of

Sumter County v. United States*, 555 F. Supp. 694 (D.D.C.1969). There, seven African

American citizens who were registered to vote in Sumter County, South Carolina brought

a motion to intervene in a Section 5 proceeding pursuant to Rule 24. *Id.* at 695. The

Court allowed their intervention, stating that, "[t]heir local perspective on the current and

historical facts at issue," would prove helpful in adequately representing the interests of

the local citizens of the county directly affected by the proposed changes. *Id.* at 697.

       Similarly, the second prong of Rule 24(a)(2), possible impairment of

interest, also presents a low bar. *See Garza v. County of Los Angeles*, 918 F.2d 763, 782

(9th Cir. 1990)(In voting rights cases, "[t]he judicial focus must be concentrated upon

ascertaining whether there has been any discrimination against certain of the State's

citizens which constitutes an impermissible *impairment* of their constitutionally protected

right to vote.")(emphasis added).  Generally, courts require that "a would-be intervenor be so situated that disposing of the action may. . .impair or impede its ability to protect its interest." *See City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009)(noting Rule 24(b) requires that there is some pending action or judgment that might "practically impair" the applicant's interests).

        The interest and impairment requirements are satisfied here.  Applicants have a direct and particularized interest in this litigation.  Section 5 was enacted to prevent retrogression of the minority vote through changes in voting procedures or policies in certain covered jurisdictions.  As a threshold matter, both Applicant OCA-GA's membership and Applicant AALAC-GA's constituency include United States citizens residing in Georgia who are registered voters and potential registered voters.  Mr. Lim is also a U.S. citizen and registered voter.  Their citizenship and Georgia residency alone indicates that they have a direct interest in this litigation.  More specifically, Mr. Lim, OCA-GA's membership and AALAC-GA's constituency are members of racial minority groups—precisely the citizens that Section 5 was designed to protect.  Thus, in addition to the direct interest that all Georgia voters have in this litigation, Applicants have a particular interest in the outcome of the case because this Court's determination could substantially limit the ability of the Asian American community to participate in the electoral process.

### (2) Lack of Adequate Representation

Likewise, the current litigants lack the knowledge and exposure to Asian American voting issues necessary to adequately advocate for and protect the interests of Asian American voters.  In voting rights cases, courts often find that the interests of the intervenor are not adequately represented even when the Justice Department or the jurisdiction involved may have similar interests as the applicant.  *See Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999)(where the NAACP moved to intervene to defend court-ordered single member districts, the Eleventh Circuit vacated the district court's denial of intervention in part stating that the NAACP had a right to intervene because the county commissioner's representation of the proposed intervenors may have been inadequate).

This principle is illustrated in *Meek v. Metropolitan Dade County,* 985 F.2d 1471 (11th Cir. 1993).  In *Meek*, a group of African American and Latino voters challenged Dade County's electoral system for county commissioners.  *Id.* at 1475.  The District Court found that the minority voters had established their claim for vote dilution.  *Id.*  Four additional individuals moved to intervene as defendants in order to pursue the appeal where the county decided not to appeal the lower court's finding.  *See id.* at 1475-77 (the initial notice of appeal for the county had expired).  The intervenors were residents of Dade County and registered voters.  *Id.*  The lower court denied their motion to intervene, stating that the applicants' interests were already adequately represented by the county.  *Id.* at 1476.

The Eleventh Circuit disagreed.  *Id.* at 1480.  It stated that "[w]hen applicants for intervention seek to achieve the same objectives as an existing party in the

case, that party is presumed to represent the applicants' interests adequately." *Id.* at 1477. This presumption, however, guides the court's analysis and is not a substitute for facts. *Id.* The court stated that "like the great majority of presumptions…it merely requires the presumed result *unless* some evidence is placed before the court tending to rebut it." *Id.* When such evidence exists, a court is obligated to make its own determination of whether the requirements of the rule are met. *Id.* "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors." *Id.* at 1478. The intervenors sought to advance their personal interests of achieving "the greatest possible participation in the political process." *Id.* In contrast, the county, which was the initial defendant, was required "to balance a range of interests likely to diverge from those of the intervenors," such as "the social and political divisiveness" of the issue. *See id.*; *see also Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997)("[F]ailure to appeal [by the county], combined with diverging interests between the representative and the proposed intervenor, is surely enough to warrant intervention.").

With respect to the instant case, the Justice Department advocates on behalf of all citizens of the United States to impede a potential violation of the Act. Like in *Meek*, the Justice Department has to balance the interests of all of the parties potentially affected by the proposed legislation. Though the Justice Department and the Asian American Applicants may have similar goals, the Applicants seek to advance the specific interests of their communities by achieving "the greatest possible participation in the political process." *See Meek*, 985 F.2d at 1478.

Other intervenors, such as the Georgia Coalition for the People's Agenda or the Georgia Association of Black Elected Officers, also advocate on behalf of their respective memberships. Although the interests of their members may closely align with Applicants' concerns, these groups have considerations distinct from that of the applicants. As in *Sumter County*, the Applicants would provide a "local perspective" as to how this legislation would affect the Asian American community specifically. Asian Americans often encounter distinctive barriers to voting not shared with other racial and cultural minorities. For example, persons of Chinese, Japanese and Korean descent often have both legal transliterated names and common English names that are used on state identifications—this can present an obstacle to verifying voter identification. Also, given that names used in Western culture generally differ from Asian names, persons reading names of Asian Americans often have trouble differentiating the first name from the surname. For example, in the name "Sin Yen Ling," based on Western standards, "Ling" appears to be the surname even though the surname may be "Sin" or "Sin Yen", given that some Asian Americans use the last listed name as the first name. This is a problem distinctive to Asian Americans and without the involvement of OCA-GA, AALAC-GA and Mr. Lim, the Court will be deprived of a perspective that would shed light on the retrogressive effect of this potential legislation on *all* rightful Georgia voters. Thus, given the unique viewpoint that Asian American applicants may add to the proceeding and the established precedent of this Court to resolve intervention determinations in favor of the intervenor in Section 5 proceedings, intervention as of right is warranted here.

## B.  Permissive Intervention

Alternatively, even if this Court does not grant intervention as of right, permissive intervention pursuant to Rule 24(b) is appropriate.  As noted above, in order for a court to grant permissive intervention, a movant must demonstrate that (1) there is a common question of law or fact, (2) the motion is timely and (3) independent jurisdiction if the original action was based on diversity of citizenship.  *Donnelly v. Glickman*, 159 F.3d 405, 411-12 (9th Cir. 1998)(noting that, even if the three requirements needed for permissive intervention are satisfied, courts have discretion to deny intervention).

Although the decision to grant intervention under 24(b) remains entirely within the court's discretion, as noted above, courts encourage intervention by private litigants.  *See id*; *accord Cajun Elec. Power Coop.*, *Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 121 (5th Cir. 1991) (noting that courts permit intervention when, in exercising discretion, the intervention would not unduly delay or prejudice the adjudication of the rights of the original parties); *but see also Allen*, 393 U.S. at 556-57.  Courts do not want to leave citizens "to depend solely on … the discretion of the Attorney General." *See id.* at 556-57.  Thus, permissive intervention is generally encouraged and awarded.  *See, e.g., id.*

Here, independent jurisdiction is not necessary given that the cause of action is derived from statutory rights set forth in the Act and therefore the basis for federal jurisdiction here is statutory—not diversity of citizenship .  Thus, the key remaining inquiry is whether Applicants' potential defenses and the main action involve a common question of law or fact.  *See, e.g., Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004)("Rule 24(b) authorizes permissive intervention for an applicant who

timely files a motion where. . .the applicant's claim or defense has a question of law or fact in common with the main action."); *see also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002)("[A]ll that is necessary for permissive intervention is that [the] intervenor's claim or defense and the main action have a question of law or fact in common.").

       The existence of a common question is liberally construed. *See Bureerong v. Uvawas*, 167 F.R.D. 83, 85 (C.D. Cal. 1996)(finding that the federal government could intervene because there existed common issues of fact where concurrent criminal case existed involving similar accusations). "Commonality of law" exists if the intervenor has a claim or defense against a party that substantially overlaps with the claims asserted by the existing party. *See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1235 (D.D.C 2003)(common question of law was found where private antitrust claims of the associations' members overlapped substantially). Likewise, "commonality of fact" exists if the same evidence on the issue is relevant to both an intervenor's defense and the defenses raised in the original dispute. *See Bureerong*, 167 F.R.D. at 86. Even if a common question of law or fact is demonstrated, however, a court may still deny intervention if it would "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b); *see also United States v. G. Heileman Brewing Co.*, 563 F. Supp. 642, 650 (D. Del. 1983)(holding extraneous issues not part of the government's case would "unnecessarily delay [and] prejudice the adjudication of the rights of the original parties").

       Here, Applicants will assert arguments factually similar to those raised by the Justice Department and the other Defendant-Intervenors (collectively the

"Defendants").  Although Applicants' strategy and reasoning may diverge somewhat from that of the Defendants, given the Applicants' local perspective, the original arguments would, at the very least, substantially overlap with those of the applicants. Likewise, as noted above, it appears that no delay or prejudice should result from the Applicants' intervention.  To the contrary, Applicants' participation should aid the Court in making its determination.  Hence, given the satisfaction of requirements for permissive intervention set forth in Rule 24(b) and the public interest served through Applicants' involvement in this dispute, permissive intervention is appropriate, even if intervention as of right is denied.

## II.  CONCLUSION

For the foregoing reasons, Applicants request to intervene as of right or, if denied, to intervene by the permission of the Court.

Date: July 26, 2010

Respectfully submitted,

Ken Kimerling *( Pro Hac Vice Motion to be Filed)*
Glenn Magpantay *(Pro Hac Vice Motion to be Filed)*
ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND
99 Hudson Street, 12th floor
New York, NY 10013
Tel: (212) 966-5932
Fax: (212) 966-4303
gmagpantay@aaldef.org
Counsel for Applicants

Michael D. Nolan
D.C. Bar 461907
MILBANK, TWEED, HADLEY& M$^c$CLOY LLP
1850 K Street, N.W., Suite 1200
Washington, D.C. 20006
Tel: (202) 835-7500
Fax: (202) 835-7586
mnolan@milbank.com
*Counsel for Applicants*

16