IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF GEORGIA, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION No. 10-CV-1062 |
| § | |
| ERIC H. HOLDER, JR., § | Three-Judge Panel: ESH-TBG-HHK |
| ATTORNEY GENERAL OF THE § | |
| UNITED STATES, § | |
| § | |
| *Defendant*. § | |

**DEFENDANT INTERVENOR GEORGIA ASSOCIATION OF LATINO
ELECTED OFFICIALS' ANSWER TO PLAINTIFF'S EXPEDITED
COMPLAINT FOR DECLARATORY JUDGMENT**

The Georgia Association of Latino Elected Officials ("Defendant Intervenor GALEO"), hereby answers each of the numbered paragraphs of the Complaint (Docket No. 1) filed by the Plaintiff in this case as follows:

**Answers to Allegations**

1. Defendant Intervenor GALEO admits the allegations of Paragraph 1 to the extent that they describe the statutory basis asserted by Plaintiff for the claims presented in the Complaint.

2. Defendant Intervenor GALEO admits the allegations of Paragraph 2 to the extent that the Voting Rights Act ("VRA") authorizes Plaintiff to bring an action seeking preclearance under Section 5 of the VRA before this Court. Defendant Intervenor GALEO denies that either the VRA or 28 U.S.C. § 2201 authorizes Plaintiff to bring the claims presented in the Complaint on behalf of the citizens of the State of Georgia.

3. Defendant Intervenor GALEO admits the allegations of Paragraph 3, except to the extent that Paragraph 3 suggests that only Defendant Eric H. Holder, Jr., Attorney General of the United States, may defend a declaratory judgment action under Section 5 of the VRA in this Court. Defendant Intervenor GALEO avers that citizens of jurisdictions in the State of Georgia frequently participate as parties in defense of declaratory judgment actions under Section 5 of the VRA.

4. The allegations in Paragraph 4 contain statements and conclusions of law

to which no response is required. Defendant Intervenor GALEO admits the allegations in Paragraph 4 to the extent that they accurately quote portions of Section 5 of the VRA, but denies that Paragraph 4 faithfully quotes the governing provisions of Section 5.  For example, Defendant Intervenor GALEO avers that Paragraph 4 omits the statutory requirement that a proposed voting change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title . . . .*" (omitted material in italics).

5. The allegations in Paragraph 5 contain statements and conclusions of law
to which no response is required. Defendant Intervenor GALEO admits the  factual allegations in Paragraph 5 to the extent that they describe the original Section 5 coverage formula contained in the Voting Rights Act of 1965, but denies that Plaintiff's coverage under Section 5 is limited by the 1965 enactment of Section 5.  In 2006, based on extensive testimony and documentary evidence, Congress reauthorized and extended Section 5 to cover Plaintiff and other jurisdictions for an additional 25 years.

6. The allegations in Paragraph 6 contain statements and conclusions of law
to which no response is required.  Defendant Intervenor GALEO admits the allegations in Paragraph 6 to the extent that Georgia is a covered jurisdiction for purposes of Section 5 of the VRA pursuant to the coverage formula set out in Section 4 of the Act as reauthorized by Congress in 2006.

7. Defendant Intervenor GALEO admits the allegations of Paragraph 7 to the extent that they describe the statutory basis asserted by Plaintiff for the claims presented in the Complaint and characterize Plaintiff's contentions.  Defendant Intervenor GALEO denies that Plaintiff's proposed procedures for verifying voter registration information ("DDS matching procedures") satisfy the requirements of Section 5 of the VRA. To the extent that the allegations of Paragraph 7 suggest that Plaintiff's proposed DDS matching procedures with respect to U.S. citizenship are required by or were adopted pursuant to the Help America Vote Act ("HAVA"), Defendant Intervenor GALEO denies that Plaintiff's proposed DDS matching procedures with respect to U.S. citizenship are required by or were adopted pursuant to HAVA.  Defendant Intervenor GALEO further denies that Plaintiff is prevented by Section 5 of the VRA from enforcing federal laws relating to voter registration and verification.

8. Defendant Intervenor GALEO denies the allegations of Paragraph 8.  Defendant Intervenor GALEO avers that an actual controversy exists between the parties only with respect to whether Plaintiff can meet its burden of proof on its claim under Section 5 of the VRA, or whether, in the alternative, Plaintiff is entitled to a declaratory judgment and injunctive relief upon its constitutional claim.

9. Defendant Intervenor GALEO admits the allegations of Paragraph 9.

10. Defendant Intervenor GALEO admits the allegations of Paragraph 10.

## FACTS
### Verification Requirements under Federal Law

11. Defendant Intervenor GALEO admits the allegations of Paragraph 11 except to the extent that the allegations refer to "minimum election standards" while the preamble of HAVA refers to "minimum election *administration* standards" (omitted material in italics).

12. The allegations in Paragraph 12 contain statements and conclusions of law to which no response is required. Defendant Intervenor GALEO admits the factual allegations in Paragraph 12 to the extent that they accurately quote portions of HAVA. The allegations do not, however, quote other relevant sections of HAVA.

13. The allegations in Paragraph 13 contain statements and conclusions of law to which no response is required. If deemed to allege facts, Defendant Intervenor GALEO admits the allegations in Paragraph 13 to the extent that they accurately quote portions of HAVA.

14. The allegations in Paragraph 14 contain statements and conclusions of law to which no response is required. Defendant Intervenor GALEO admits the factual allegations in Paragraph 14 to the extent that they accurately quote portions of HAVA.

15. The allegations in Paragraph 15 contain statements and conclusions of law to which no response is required. Defendant Intervenor GALEO admits the factual allegations in Paragraph 15 to the extent that they accurately cite *Schwier v. Cox*, No. 00-CV-2820 (N.D. Ga. June 27, 2006), and accurately quote portions of HAVA. Defendant Intervenor GALEO denies the allegations of Paragraph 15 to the extent they contend that the DDS matching procedures at issue in this action are required by Section 303 of HAVA.

16. Defendant Intervenor GALEO denies the allegations of Paragraph 16.

17. The allegations in Paragraph 17 contain statements and conclusions of law to which no response is required. Upon information and belief Defendant Intervenor GALEO denies the factual allegation that Georgia "collected full Social Security numbers from each registrant" prior to the *Schwier* decision. Defendant Intervenor GALEO denies the factual allegations of Paragraph 17 to the extent that they contend that the DDS matching procedures at issue in this action are required by Section 303(a)(5) of HAVA.

### Communications with the Department of Justice

18. Defendant Intervenor GALEO lacks sufficient knowledge to admit or deny the allegations in Paragraph 18. Defendant Intervenor GALEO denies the allegations of Paragraph 18 to the extent they contend that the DDS matching procedures at issue in this action are "required under Section 303(a)(5)."

19. Defendant Intervenor GALEO admits the allegations in Paragraph 19 to the extent that the Chief of the Voting Section of the Civil Rights Division of the U.S. Department of Justice sent Georgia a letter, dated April 23, 2007, concerning whether Georgia was "online through the HAVA verification program for matching the last four digits of social security numbers against the SSA database." Defendant Intervenor GALEO lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 19.

20. Defendant Intervenor GALEO admits the allegations in Paragraph 20 to the extent that Georgia began performing record matching between the statewide voter registration database and the Department of Driver Services ("DDS") database in or around June 2007, but denies the remainder of the allegations in Paragraph 20. Upon information and belief, Defendant Intervenor GALEO avers that in September 2008, Georgia officials first directed county boards of registrars to prevent persons appearing on the citizenship "exceptions report" from voting.

21. Defendant Intervenor GALEO admits the allegations of Paragraph 21 to the extent that they describe aspects of the procedures Plaintiff identifies as the "Georgia HAVA Verification Process." Defendant Intervenor GALEO denies that the allegations of Paragraph 21 provide a complete description of the proposed matching procedures. Defendant Intervenor GALEO avers that the proposed use of "exception list[s]" for which Plaintiff seeks preclearance under Section 5 of the VRA are not required by HAVA, and it is incorrect to refer to those procedures as a component of "HAVA Verification." Defendant Intervenor GALEO further avers that the citizenship matching and hearing procedures for which Plaintiff seeks preclearance under Section 5 of the VRA are not required by HAVA, and it is incorrect to refer to those procedures as a component of "HAVA Verification."

22. Defendant Intervenor GALEO denies the allegations of Paragraph 22.

23. Defendant Intervenor GALEO denies the allegations of Paragraph 23.  Defendant Intervenor GALEO avers that on October 9, 2008, Jose Morales, a resident of Cherokee County, Georgia, brought a enforcement action, under Section 5 of the VRA, in the U.S. District Court for the Northern District of Georgia against then-Secretary of State Karen Handel, raising claims under Section 5 of the VRA and Section 8 of the National Voter Registration Act ("NVRA"), and that the complaint filed by Mr. Morales listed as counsel attorneys from the Mexican-American Legal Defense and Educational Fund, the Voting Rights Project of the American Civil Liberties Union and the Lawyer's Committee for Civil Rights Under Law.  *See Morales v. Handel*, No. 08-CV-3172 (N.D. Ga. filed Oct. 9, 2008).  Defendant Intervenor GALEO further avers that the citizenship matching and hearing procedures that formed the basis of the claim under Section 5 of the VRA in *Morales* were not – and are not – required by HAVA, and it is incorrect to refer to those procedures as a component of "HAVA Verification."

24. Upon information and belief, Defendant Intervenor GALEO admits the allegations in Paragraph 24 to the extent that the Chief of the Voting Section of the Civil Rights

Division of the U.S. Department of Justice sent Georgia a letter, dated October 10, 2008, concerning Georgia's Social Security Administration records matching.

25. Defendant Intervenor GALEO lacks sufficient knowledge to admit or deny the allegations of Paragraph 25 with respect to assertions by the U.S. Department of Justice. Defendant Intervenor GALEO admits the allegations of Paragraph 25 to the extent that a preclearance submission, under Section 5 of the VRA, was made on October 14, 2008, by the Georgia Attorney General for certain voter registration procedures based upon matching of the Georgia statewide voter registration database and the Georgia DDS database. Defendant Intervenor GALEO denies the remaining allegations of Paragraph 25, specifically that the procedures identified in Plaintiff's Complaint as the "Georgia HAVA Verification Process" were fully contained in the Georgia Attorney General's October 14, 2008 submission.

26. Defendant Intervenor GALEO denies that the procedures identified in Plaintiff's Complaint as the "Georgia HAVA Verification Process" were fully contained in the Georgia Attorney General's October 14, 2008 submission, but admits the remaining allegations of Paragraph 26.

27. Defendant Intervenor GALEO admits the allegations of Paragraph 27 except to the extent that this paragraph incorporates the term "temporary HAVA verification process." Defendant Intervenor GALEO avers that the court in *Morales* described its Order as "temporary remedy for the lacks of preclearance, unless and until preclearance is obtained," and not as a "temporary HAVA verification process" as alleged in Paragraph 27.

28. Defendant Intervenor GALEO denies that the procedures identified in Plaintiff's Complaint as the "Georgia HAVA Verification Process" were fully contained in the Georgia Attorney General's October 14, 2008 submission, but admits the remaining allegations of Paragraph 28.

29. Defendant Intervenor GALEO admits the allegations of Paragraph 29.

30. The allegations in Paragraph 30 contain statements and conclusions of law to which no response is required. Defendant Intervenor GALEO admits the factual allegation that the U.S. Attorney General interposed an objection under Section 5 of the VRA objection to the Georgia Attorney General's submission on May 29, 2009, but denies the remaining allegations in Paragraph 30.

31. Defendant Intervenor GALEO lacks sufficient information to admit or deny the allegations of Paragraph 31.

32. Defendant Intervenor GALEO admits the allegations of Paragraph 32 to the extent that the U.S. Department of Justice sent Georgia the letter, dated June 16, 2009, attached as Exhibit 3 to Plaintiff's Complaint, but denies the remaining allegations of Paragraph 32.

33. Defendant Intervenor GALEO lacks sufficient information to admit or deny the allegations of Paragraph 33.

34. Defendant Intervenor GALEO lacks sufficient information to admit or deny the allegations of Paragraph 34 to the extent that a revised process "took into account the issues specifically stated by DOJ during those discussions," but admits the remainder of the allegations of Paragraph 34.

35. Defendant Intervenor GALEO admits that on October 13, 2009, the U.S. Department of Justice denied the Georgia Attorney General's request for reconsideration of the May 29, 2009 objection, and identified a portion of Georgia's August 11, 2009 correspondence to be a new preclearance submission under Section 5 of the VRA. Defendant Intervenor GALEO lacks sufficient information to admit or deny the allegations of this paragraph concerning what the U.S. Department of Justice advised before October 13, 2009, and denies the remaining allegations of Paragraph 35.

36. Defendant Intervenor GALEO denies the allegations of Paragraph 36.

37. Defendant Intervenor GALEO admits the allegations of Paragraph 37.

38. Defendant Intervenor GALEO admits the allegations of Paragraph 38, but denies that the "Georgia HAVA Verification Process" was fully contained in the preclearance submission under Section 5 of the VRA.

39. Defendant Intervenor GALEO denies the allegations of Paragraph 39.

40. Defendant Intervenor GALEO lacks sufficient information to admit or deny the allegations of Paragraph 40.

41. The allegations in this paragraph contain statements and conclusions of law
to which no response is required. Defendant Intervenor GALEO admits the factual allegations of Paragraph 41 to the extent that they distinguish between the citizenship-related procedures at issue in *Morales* and other procedures at issue in this action, and denies the remaining allegations of Paragraph 41.

## Expedited Consideration

42. Defendant Intervenor GALEO admits the allegations of Paragraph 42.

43. Defendant Intervenor GALEO admits the allegations of Paragraph 43.

44. Defendant Intervenor GALEO admits the allegations of Paragraph 44.

45. Defendant Intervenor GALEO admits the allegations of Paragraph 45 to the extent that they describe the relief sought by Plaintiff. Defendant Intervenor GALEO denies that

Plaintiff is entitled to expedited consideration of its claims. Defendant Intervenor GALEO avers that Plaintiff has been dilatory both in seeking preclearance under Section 5 of the VRA from the U.S. Department of Justice, and in bringing this action. Defendant Intervenor GALEO further avers that any expedited consideration of Plaintiff's claims under Section 5 of the VRA should not limit the opportunity for full discovery and briefing of Plaintiff's claims.

### The Georgia HAVA Verification Process Sought to be Precleared

46. Defendant Intervenor GALEO admits the allegations of Paragraph 46 to the extent that they describe the relief sought by Plaintiff and the procedures Plaintiff purports to implement in the future. Defendant Intervenor GALEO denies the remainder of the allegations of Paragraph 46, including the contention that Plaintiff's proposed DDS matching procedures are required by Section 303(a)(5) of HAVA.

47. Defendant Intervenor GALEO admits the allegations of Paragraph 47.

48. Defendant Intervenor GALEO admits the allegations of Paragraph 48 to the extent that they describe the relief sought by Plaintiff and the procedures Plaintiff purports to implement in the future, but denies that the procedures described in Paragraph 48 are reasonably calculated to verify the identities of voter registration applicants.

49. Defendant Intervenor GALEO admits the allegations of Paragraph 49 to the extent that they describe the relief sought by Plaintiff and the procedures Plaintiff purports to implement in the future, but denies that the procedures described in Paragraph 49 do not discriminate on the basis of race or color.

50. Defendant Intervenor GALEO admits the allegations of Paragraph 50 to the extent that they describe the procedures Plaintiff purports to implement in the future.

### Verification Process for Covered Applicants Who Provide
### a Georgia Driver's License Number or Georgia DDS ID Card

51. Defendant Intervenor GALEO admits the allegations of Paragraph 51 to the extent that they describe the procedures Plaintiff purports to implement in the future. Defendant Intervenor GALEO denies that any federal law requires Georgia to conduct a "citizenship status" match.

52. Defendant Intervenor GALEO admits the allegations of Paragraph 52 to the extent that they describe the procedures Plaintiff purports to implement in the future. Defendant Intervenor GALEO denies that any federal law requires Georgia to perform an "exact match."

53. With respect to Paragraph 53, Defendant Intervenor GALEO avers that the phrase "no match" is too vague to permit Defendant Intervenor GALEO to admit or deny the allegation because it fails to distinguish between situations in which Plaintiff's

procedures create a match between some or none of the information regarding a voter registration applicant. Defendant Intervenor GALEO denies that any federal law requires Georgia to prepare an "exceptions report."

54. Defendant Intervenor GALEO admits the allegations of Paragraph 54 to the extent that they describe the procedures Plaintiff purports to implement in the future. Defendant Intervenor GALEO denies that any federal law requires Georgia to provide an "exceptions report" to county boards of registrars.

### Verification Process for Covered Applicants Who Provide Only Last Four Digits of Social Security Number

55. Defendant Intervenor GALEO admits the allegations of Paragraph 55 to the extent that they describe the procedures Plaintiff purports to implement in the future.

56. Defendant Intervenor GALEO admits the allegations of Paragraph 56 to the extent that they describe the procedures Plaintiff purports to implement in the future.

57. Defendant Intervenor GALEO admits the allegations of Paragraph 57 to the extent that they describe the procedures Plaintiff purports to implement in the future.

58. With respect to Paragraph 58, Defendant Intervenor GALEO avers that the phrase "no match" is too vague to permit Defendant Intervenor GALEO to admit or deny the allegation because it fails to distinguish between situations in which Plaintiff's procedures create a match between some or none of the information regarding a voter registration applicant. Defendant Intervenor GALEO denies that any federal law requires Georgia to prepare an "exceptions report."

59. Defendant Intervenor GALEO admits the allegations of Paragraph 59 to the extent that they describe the procedures Plaintiff purports to implement in the future. Defendant Intervenor GALEO denies that any federal law requires Georgia to provide an "exceptions report" to county boards of registrars or requires such a report to be used for any purpose.

### United States Citizenship Verification Process

60. Defendant Intervenor GALEO admits the allegations of Paragraph 60 to the extent that they set forth Plaintiff's own description of the citizenship verification process for which Plaintiff seeks a declaratory judgment, and otherwise denies the remainder of the allegations in this paragraph. Defendant Intervenor GALEO denies the allegation in Paragraph 60 that if the DDS database indicates that a Covered Applicant is not a citizen of the United States that the individual is necessarily not entitled to vote. Upon information and belief, including reference to the actual practices implemented by Georgia without preclearance under Section 5 of the VRA, Defendant Intervenor GALEO avers that this paragraph is a materially incomplete description of the purported

citizenship verification procedures that Georgia would employ if preclearance under Section 5 of the VRA were granted by this Court.

61. Defendant Intervenor GALEO admits the allegations of Paragraph 61 to the extent that they set forth Plaintiff's own description of the citizenship verification process for which Plaintiff seeks a declaratory judgment, and otherwise denies the remainder of the allegations in this paragraph. Defendant Intervenor GALEO denies that O.C.G.A. § 21-2-228 requires county boards of registrars to routinely conduct inquiries into the citizenship of voter registration applicants.

## COUNT I - DECLARATORY JUDGMENT

62. In response to Paragraph 62, Defendant Intervenor GALEO reincorporates by reference the responses to the allegations of Paragraphs 1 to 61.

63. Defendant Intervenor GALEO denies the allegations of Paragraph 63.

64. Defendant Intervenor GALEO denies the allegations of Paragraph 64.

65. Defendant Intervenor GALEO denies the allegations of Paragraph 65.  Defendant Intervenor GALEO avers that Paragraph 65 omits the statutory requirement with respect to "denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title . . . .*" (omitted material in italics).

66. Defendant Intervenor GALEO denies the allegations of Paragraph 66.  Defendant Intervenor GALEO avers that Paragraph 66 omits the statutory requirement with respect to "denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title . . . .*" (omitted material in italics).

67. Defendant Intervenor GALEO denies the allegations of Paragraph 67.

68. Defendant Intervenor GALEO denies the allegations of Paragraph 68.

69. Defendant Intervenor GALEO denies the allegations of Paragraph 69.

70. Defendant Intervenor GALEO denies the allegations of Paragraph 70.

## COUNT II - DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

71. In response to this paragraph Defendant Intervenor GALEO reincorporates by reference the responses to the allegations of Paragraphs 1 to 70.

72. Defendant Intervenor GALEO denies the allegations of Paragraph 72 except to the extent that they describe the relief sought by Plaintiff. Defendant Intervenor GALEO denies specifically that Plaintiff is entitled to the relief sought in Paragraph 72.

73. Defendant Intervenor GALEO admits the allegations of Paragraph 73.

74. Defendant Intervenor GALEO admits the allegations of Paragraph 74, except to the extent that Paragraph 74 characterizes conditions in 1982 by the phrase "even as late." Defendant Intervenor GALEO further avers that during the Congressional reauthorization of Section 5 in 2006, the conditions justifying the imposition of the preclearance requirements upon Georgia existed and existed in very recent memory.

75. Defendant Intervenor GALEO denies the allegations of Paragraph 75, except that Defendant Intervenor GALEO admits that the 2006 reauthorization of Section 5 of the VRA maintained the pre-existing Section 5 coverage determinations based upon the 1964, 1968, and 1972 presidential elections, and that Georgia consequently continued to be a covered jurisdiction.

76. Defendant Intervenor GALEO denies the allegations of Paragraph 76.

77. Defendant Intervenor GALEO denies the allegations of Paragraph 77.

78. Defendant Intervenor GALEO denies the allegations of Paragraph 78.

79. Defendant Intervenor GALEO denies the allegations of Paragraph 79, except that Defendant Intervenor GALEO admits that Section 2 of the VRA is a permanent provision, nationwide in scope, and permits challenges to certain types of voting practices and procedures. Defendant Intervenor GALEO avers that the U.S. Supreme Court has found Section 2 and Section 5 to "combat different evils and, accordingly, to impose very different duties upon the States." *Reno* v. *Bossier Parish School Board*, 520 U.S. 471, 477 (1997). Defendant Intervenor GALEO avers that Section 2 of the VRA is not an adequate substitute for Section 5.

80. Defendant Intervenor GALEO denies the allegations of Paragraph 80.

81. Defendant Intervenor GALEO denies the allegations of Paragraph 81.

82. Defendant Intervenor GALEO denies the allegations of Paragraph 82.

83. Defendant Intervenor GALEO denies the allegations of Paragraph 83. Defendant Intervenor GALEO specifically denies that Section 5 of the VRA harms or has harmed minority voters in any way. Defendant Intervenor GALEO avers that Section 5 of the VRA has been and continues to be a crucial protection for minority citizens against voting discrimination in Georgia.

84. Defendant Intervenor GALEO denies the allegations of Paragraph 84. Defendant Intervenor GALEO specifically denies that Section 5 of the VRA prevents Georgia from conducting any federally mandated activities with respect to HAVA.

85. Defendant Intervenor GALEO denies the allegations of Paragraph 85.

86. Defendant Intervenor GALEO admits the allegation of Paragraph 86 that Georgia is unable to change HAVA's requirement that applicants be verified, and denies the remainder of the allegations of Paragraph 86.

87. Defendant Intervenor GALEO admits the allegations of Paragraph 87, but avers that this paragraph fails to identify numerous additional reasons for which bailout would be denied should it be sought by Georgia.

88. Defendant Intervenor GALEO lacks sufficient knowledge to admit or deny the allegations of Paragraph 88 without identification of the classes of governmental units purported to be enumerated by this paragraph.

89. Defendant Intervenor GALEO lacks sufficient knowledge to admit or deny the allegations of Paragraph 89 without identification of the classes of governmental units to which this paragraph refers. Defendant Intervenor GALEO denies the allegations of this paragraph with respect to any voting practice or procedure enacted by the Georgia Legislature, signed into effect by the Governor, or carried out at the direction of the Office of the Georgia Secretary of State. Defendant Intervenor GALEO avers that a substantial portion of the objections under Section 5 of the VRA and other voting rights violations in Georgia have concerned election practices and procedures for counties and county school boards, which must be enacted by the Georgia Legislature and signed into effect by the Governor of Georgia. Defendant Intervenor GALEO further avers that the "exception" lists which Plaintiff proposes to distribute to county registrars (*see* Paragraphs 54, 59 and 61) are to be used by county election officials at the specific direction of the Georgia Secretary of State.

90. Defendant Intervenor GALEO denies the allegations of Paragraph 90.

91. Defendant Intervenor GALEO denies the allegations of Paragraph 91.


DATED: July 14, 2010                    Respectfully submitted,

                                               /s/ Nina Perales
NINA PERALES
District of Columbia Bar No. TX0040
MEXICAN AMERICAN LEGAL DEFENSE &
AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, Texas 78205

(210) 224-5476 (telephone)
(210) 224-5382 (facsimile)
nperales@maldef.org

*Counsel for Movant Defendant-Intervenor GALEO*