# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE STATE OF GEORGIA<br><br>        *Plaintiff,*<br><br>    v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States<br><br>        *Defendant,*<br><br>CONCERNED BLACK CLERGY OF METROPOLITAN ATLANTA, THE SOUTHERN REGIONAL OFFICE OF THE RAINBOW PUSH COALITION, MICHAEL B. WRIGHT, SR., AND JANICE MATHIS<br><br>        *Applicants for Intervention.* | Civil Action No. 1:10-CV-01062<br>(ESH, HHK, TBG) |

## MOTION OF CONCERNED BLACK CLERGY OF METROPOLITAN ATLANTA, THE SOUTHERN REGIONAL OFFICE OF THE RAINBOW PUSH COALITION, MICHAEL B. WRIGHT, SR., AND JANICE MATHIS TO INTERVENE AS DEFENDANTS

### Introduction

Concerned Black Clergy of Metropolitan Atlanta, the Southern Regional Office of the Rainbow PUSH Coalition, Michael B. Wright, Sr., and Janice Mathis (collectively, "Proposed Intervenors"), by their undersigned counsel, hereby submit this motion to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), the accompanying Statement of Points and Authorities, and Answer in accordance with Local Civil Rule 7(j). In the alternative, Proposed Intervenors seek permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1). Proposed Intervenors seek to intervene as Defendants in this action to defend the constitutionality of Section 5 of the Voting Rights Act and

to challenge the preclearance of proposed discriminatory voting changes submitted by the State of Georgia.

Proposed Intervenors respect this Court's interest in the efficient conduct of future proceedings in this matter. Thus, if intervention is granted, Proposed Intervenors will (i) participate in this action on the schedule established for existing parties; (ii) avoid unnecessary delays and duplication of efforts in areas satisfactorily addressed and represented by the existing Defendant; and (iii) coordinate all future proceedings in this action with the existing parties, to the extent possible, consistent with Proposed Intervenors' counsel's duties and ethical obligations to their clients.

1. Proposed Intervenor Concerned Black Clergy of Metropolitan Atlanta is a nonprofit organization located in Atlanta, Georgia. Among other activities, Concerned Black Clergy of Metropolitan Atlanta has held and sponsored voter registration and voter education activities for several years, and has been credited with registering tens of thousands of voters in the state. Proposed Intervenor the Southern Regional Office of the Rainbow PUSH Coalition is a multi-racial membership organization located in Atlanta, Georgia. Among other activities, in 2005 the Southern Regional Office of the Rainbow PUSH Coalition organized "Keep the Vote Alive," a demonstration held in Atlanta and aimed at educating voters about the continuing need for the protections of the Voting Rights Act ("VRA"). Over 15,000 people attended the event, making it one of the largest demonstrations in Atlanta history. These Proposed Intervenors are organizations committed to vigorously promoting and safeguarding the full, equal and active political participation of Blacks and other minorities in Georgia.

2. Proposed Intervenors Michael B. Wright and Janice Mathis are African-American residents and registered voters of Georgia.

3. Proposed Intervenors regard the VRA as an essential piece of federal legislation that has served, both historically and presently, to safeguard the voting rights of Blacks and other racial minorities in Georgia. Proposed Intervenors assert that Section 5 of the VRA is necessary to safeguard their voting rights from the persisting threat of voting discrimination in Georgia.

4. The grounds for this motion, more fully described in the accompanying Statement of Points and Authorities, are set forth below:

5. Plaintiff brought this declaratory judgment action under Section 5 of the VRA, as amended, 42 U.S.C. § 1973c, seeking judicial preclearance of a controversial and unreliable database matching program putatively designed to improve the reliability of the voter registration rolls even though this measure would have a retrogressive effect on eligible minority voters in Georgia.

6. In the alternative, Plaintiff seeks a determination by this Court that Section 5 is unconstitutional as applied to Georgia, and asks this Court to permanently enjoin its enforcement.

7. Proposed Intervenors seek to intervene in a timely fashion. Plaintiff filed their complaint on June 22, 2010. The Court held a scheduling conference on July 9, 2010 and issued a scheduling order on July 12, 2010. This motion to intervene is made before the Defendant has filed its Answer, before commencement of the discovery period, and before any other deadline set forth by this Court's scheduling order. Intervention at this early stage of the litigation will not unduly delay or prejudice the adjudication of the rights of original parties.

8. Proposed Intervenors are African-American registered voters and organizations who represent the interests of minority voters and prospective minority voters in Georgia, a state fully covered by Section 5. Proposed Intervenors are all members of the class of persons or represent the interests of the members of persons the VRA was specifically designed to protect.

9. Proposed Intervenors have direct, substantial and legally protectable interests in this action. The questions of law and fact concerning the constitutionality of Section 5 and the legality of the proposed voting change, directly impact the voting rights of Proposed Intervenors.

10. Proposed Intervenors have a strong interest in preventing Georgia from implementing discriminatory voting changes, such as the one the State is attempting to enact here. In the previous term, a plurality of the United States Supreme Court observed: "racial discrimination and racially polarized voting are not ancient history. Much remains to be done to ensure that citizens of all races have equal opportunity to share and participate in our democratic processes and traditions. . . ." *Bartlett v. Strickland*, 129 S. Ct. 1231, 1249 (2009) (Kennedy, J.). The Supreme Court also recently recognized that the VRA safeguards the rights of minority voters. *Nw. Austin Mun. Util. Dist. No. One v. Hol*der, 129 S. Ct. 2504, 2506 (2009) (noting that the "improvements are no doubt due in significant part to the Voting Rights Act itself, and stand as a monument to its success").

11. The alternative relief that Plaintiff seeks presents the possibility of invalidating Section 5, a core provision of the VRA, which was reauthorized by Congress in 2006. Plaintiff's constitutional claims would, if successful, harm the federally-protected voting rights of Proposed Intervenors and similarly situated minority voters elsewhere in Georgia.

12. The disposition of this case, therefore, could impair Proposed Intervenors' interest in ensuring the continued application of Section 5 to the State of Georgia. Thus, any adverse ruling would significantly compromise the Proposed Intervenors' guarantees under the Fourteenth and Fifteenth Amendments, which are protected by this core provision of the VRA.

13. Finally, the disposition of this case may impair Proposed Intervenors' interest in maintaining a voter registration process in the State of Georgia that is free from discriminatory

practices. Proposed Intervenors, who, among other things, play a critical role in facilitating the registration of Black voters in Georgia, have a distinct interest in the outcome of this case.

14. This Court and others have recognized the significant impact of voting rights cases on the exercise of fundamental rights and routinely grant intervention to minority voters in such cases, including declaratory judgment actions and enforcement suits. *See*, *e.g.*, *Nw. Austin Mun. Util. Dist. No. One v. Mukasey,* 573 F. Supp. 2d 221, 230 (D.D.C. 2008) (granting multiple motions to intervene presented by African-American, Latino and other minority voters in case seeking bailout under Section 4(a) of the VRA and challenging the constitutionality of Section 5 of VRA; NAACP Legal Defense Fund served as counsel to African- American Intervenors); *La. House of Representatives v. Ashcroft*, Civ. No. 02-62 (D.D.C. June 6, 2002) (granting coalition of African-American and other voters' motion to intervene in a Section 5 declaratory judgment action seeking preclearance of redistricting plan where constitutional claims were asserted; voters were represented by the NAACP Legal Defense and Educational Fund, Inc.); *Georgia v. Ashcroft*, 539 U.S. 461 (2003) (upholding D.C. District Court's grant of private parties' motion to intervene on grounds that intervenors' interests were not adequately represented by the existing parties); *Bossier Parish Sch. Bd. v. Reno*, 907 F. Supp. 434 (D.D.C. 1995) (making extensive reference to arguments presented by Defendant Intervenors, African-American voters, in Section 5 declaratory judgment action); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982) (recognizing arguments presented by Intervenors, African-American voters, in Section 5 declaratory judgment action), *aff'd*, 459 U.S. 1166 (1983).

15. Moreover, Proposed Intervenors' interests may not be adequately represented by the existing Defendant, Attorney General Holder. Government entities often cannot adequately represent the interests of private parties. *See*, *e.g.*, *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (private party seeking to protect its financial interest allowed to intervene

despite presence of government, which represented general public interest); *accord Natural Res. Def. Council, Inc. v. United States Envtl. Prot. Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (pesticide manufacturers allowed to intervene because even though both EPA and intervenors wanted to uphold regulations, their interests cannot always be expected to coincide, since the court recognized that the EPA "represents the public interest, not solely that of the . . . industry"). Defendant Attorney General Holder has institutional constraints that are likely to shape his litigation strategy, including the types of arguments or defenses that he may offer, which may not always coincide with the interests of Proposed Intervenors. For instance, Proposed Intervenors may take a broader view of the retrogressive effect of the voting change at issue in this case than does the Defendant.

16. In addition, any position taken by the United States in this matter could shift during the course of the litigation. Indeed, the position of the United States has changed in cases that lie at the nexus between civil rights issues and constitutional law. *See United States v. N.Y. City Bd. of Educ.*, No. 96-CV-0374 (FB)(RML) (E.D.N.Y. Sept. 11, 2006), slip op. at 5, 31 (after bringing action challenging "three entry-level examinations that the Board had administered, as well as the recruiting practices that it had used to publicize those exams, [as] violat[ing] Title VII," United States entered into a Settlement Agreement "that awarded employment benefits to a group of 59 individuals (the 'beneficiaries') composed of [B]lack, Hispanic and Asian men and women, and non-minority females"; however, "[i]n April, 2002 . . . the United States decided that it would no longer defend the lawfulness of the Agreement's remedies for those beneficiaries who had not taken any of the challenged exams"; NAACP Legal Defense and Educational Fund, Inc. represented intervenors); *Grutter v. Bollinger*, 539 U.S. 306 (2003) (despite role in prohibiting discrimination of the basis of race, color, or national origin, United States reversed course and took position opposing affirmative

action program). The issues that may be litigated in this case implicate the legal validity of what is widely regarded as the nation's most effective civil rights statute, and its adjudication should be shielded from any potential vacillations that could undermine the thorough presentation of complex legal questions.

17. Defendant Attorney General Holder does not have the same stake in this matter as Proposed Intervenors or other minority voters who have experienced, and continue to experience, voting discrimination that has impaired their ability to participate fully and equally in Georgia's political processes.

18. Proposed Intervenors, all of whom reside or are located within the State of Georgia, also bring to the litigation a "local perspective on the current and historical facts at issue" which is not likely to be presented by Defendant and could benefit the court's understanding of Plaintiff's claims. *County Council of Sumter County v. United States,* 555 F. Supp. 694, 697 (D.D.C. 1983). *See also Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (granting individual voters' motion to intervene in HAVA suit); *Commack Self-Service Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93 (E.D.N.Y. 1996) (noting that intervenors would bring a different perspective to case that might assist court, and that intervention came early in the action); *Fiandaca v. Cunningham*, 827 F.2d 825, 835 (1st Cir. 1987) (likelihood that applicants would introduce additional evidence favors intervention).

19. Proposed Intervenors have concrete and cognizable interests in this litigation and satisfy the standing requirements imposed by Article III. They have a vested interest in preventing the implementation of discriminatory voting changes that would prevent or frustrate the registration of otherwise eligible Black voters in Georgia. Proposed Intervenors also have an interest in upholding the constitutionality of Section 5.

20. Significantly, Counsel for Proposed Intervenors have substantial experience in VRA litigation including, but not limited to, Section 5 declaratory judgment actions before three-judge panels in this Court, defending the record that led both to the initial congressional enactment and subsequent reauthorizations of the Act, and defending constitutional challenges to the VRA (e.g. as counsel to African-American Intervenors in *Nw. Austin Mun. Util. Dist. No. One*, 129 S. Ct. 2504, a constitutional challenge to the 2006 reauthorization of Section 5 of the VRA). Counsel's significant experience provides Proposed Intervenors with competent, effective representation, and will also very likely benefit the Court in the adjudication of the issues presented in this case.

21. Intervention here is appropriate as of right pursuant to Fed. R. Civ. P. 24(a)(2), or, in the alternative, permissively pursuant to Fed. R. Civ. P. 24(b)(1).

22. Counsel for Plaintiff State of Georgia and Defendant United States have advised that neither oppose permissive intervention by Proposed Intervenors.

WHEREFORE, Proposed Intervenors respectfully request that their Motion to Intervene as Defendants be granted.

August 2, 2010

Respectfully submitted,

/s/ Kristen Clarke
John Payton
  Director-Counsel
Debo P. Adegbile
  Associate Director-Counsel
Ryan P. Haygood
Dale E. Ho
NAACP Legal Defense and
  Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 219-1900

Kristen Clarke  (D.C. Bar. No. 973885)
NAACP Legal Defense and
  Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

*Attorneys for Proposed Intervenors*

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2010, I caused to be served a copy of the foregoing Motion of Concerned Black Clergy of Metropolitan Atlanta, the Southern Regional Office of the Rainbow Push Coalition, Michael B. Wright, Sr., and Janice Mathis to Intervene as Defendants and Statement of Points and Authorities in support thereof; [Proposed] Order; [Proposed] Answer; LCvR 7.1 Disclosure of Concerned Black Clergy of Metropolitan Atlanta; and LCvR 7.1 Disclosure of the Southern Regional Office of the Rainbow Push Coalition to the following by electronic mail:

**Anne W. Lewis**
**Bryan Tyson**
**Frank B. Strickland**
STRICKLAND BROCKINGTON LEWIS, LLP
1170 Peachtree Street, NE
Midtown Proscenium Suite 2200
Atlanta, GA 30309
(678) 347-2200
Fax: (678) 347-2210
awl@sbllaw.net
bpt@sbllaw.net
fbs@sbllaw.net

*Attorneys for Plaintiff*

**Jon M. Greenbaum**
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
(202) 662-8325
jgreenbaum@lawyerscommittee.org

**Meredith E.B. Bell-Platts**
AMERICAN CIVIL LIBERTIES UNION
230 Peachtree Street, NW, Suite 1440
Atlanta, GA 30303
(404) 523-2721
mbell@aclu.org

**Arthur B. Spitzer**
AMERICAN CIVIL LIBERTIES UNION
1400 20th Street, NW, Suite 119
Washington, DC 20036-5920
(202) 457-0800 x113
Fax: (202) 452-1868
artspitzer@aol.com

*Attorneys for Intervenors Tyrone Brooks, Edward O. Dubose, Helen Butler, Georgia Association of Black Elected Officials, Georgia State NAACP, and Georgia Coalition for the Peoples' Agenda*

**Brian F. Heffernan**
U.S. DEPARTMENT OF JUSTICE
1800 G Street, NW
Room 7260
Washington, DC 20006
(202) 514-4755
Fax: (202) 307-3961
brian.f.heffernan@usdoj.gov

*Attorney for Defendant Eric H. Holder, Jr., Attorney General of the United States*

**Nina Perales**
MEXICAN AMERICAN LEGAL DEFENSE & EDUCATIONAL FUND, INC.
110 Broadway
Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: 210-224-3582
Email: nperales@maldef.org

*Attorneys for Intervenors Georgia Association of Latino Elected Officials*

**Michael David Nolan**
MILBANK, TWEED, HADLEY & MCCLOY
1850 K Street, NW
Suite 1100
Washington, DC 20006
(202) 835-7524
Fax: (202) 263-7524
mnolan@milbank.com

*Attorneys for Intervenors Organization of Chinese Americans Georgia Chapter, Asian American Legal Advocacy Center of Georgia, and Marvin Lim*

August 2, 2010

                                                                s/ Kristen Clarke
Kristen Clarke (D.C. Bar No. 973885)
NAACP Legal Defense and
 Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300
kclarke@naacpldf.org

*Attorney for Proposed Intervenors*