**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE STATE OF GEORGIA<br><br>*Plaintiff,*<br><br>v.<br><br>ERIC H. HOLDER, JR., in his official capacity as<br>Attorney General of the United States of America<br><br>*Defendant,*<br><br>CONCERNED BLACK CLERGY OF<br>METROPOLITAN ATLANTA, THE<br>SOUTHERN REGIONAL OFFICE OF THE<br>RAINBOW PUSH COALITION, MICHAEL B.<br>WRIGHT, SR., AND JANICE MATHIS<br><br>*Applicants for Intervention.* | Civil Action No. 1:10-CV-01062<br>(ESH, HHK, TBG) |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF
CONCERNED BLACK CLERGY OF METROPOLITAN ATLANTA, THE  SOUTHERN
REGIONAL OFFICE OF THE RAINBOW PUSH COALITION, MICHAEL B.
WRIGHT, SR. AND JANICE MATHIS TO INTERVENE AS DEFENDANTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .................................................................................1

FACTUAL BACKGROUND ....................................................................................3

ARGUMENT ............................................................................................................4

I.   Proposed Intervenors Should be Permitted to Intervene as of Right
Pursuant to Federal Rule of Civil Procedure 24(a) ................................................4

     A.   As a General Matter, Courts Recognize the Particular Significance of
Rule 24 Intervention in Voting Rights Cases ...............................................5

     B.   Proposed Intervenors Satisfy the Requirements to Intervene as of Right
Pursuant to Rule 24(a)(2) .............................................................................6

         1.   Proposed Intervenors' Motion Is Timely .........................................7

         2.   Intervenors Have Direct, Substantial, and Legally Protectable
Interests ...........................................................................................8

         3.   Proposed Intervenors' Interests May Be Impaired By the Disposition
of the Litigation ...............................................................................9

         4.   Intervenors' Interests May Not Be Adequately Represented
By the Present Parties ....................................................................11

         5.   Proposed Intervenors Satisfy the Requirements of
Article III Standing ........................................................................17

II.   In the Alternative, Permissive Intervention Is Appropriate in this Case ...............18

CONCLUSION........................................................................................................21

## TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Akiachak Native Cmty. v. Dep't of the Interior,*
    584 F. Supp. 2d 1 (D.D.C. 2008)..........................................................................10

*Allen v. State Bd. of Elections,*
    393 U.S. 544 (1969)................................................................................6 n.1

*Am. Horse Prot. Ass'n, Inc. v. Veneman,*
    200 F.R.D. 153 (D.D.C. 2001)..........................................................................4, 5

*Associated Gen. Contractors of Conn., Inc. v. City of New Haven,*
    130 F.R.D. 4 (D. Conn. 1990)........................................................................13 n.2

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979)........................................................................................18

*Bartlett v. Strickland,*
    129 S. Ct. 1231 (2009)....................................................................................10

*Beer v. United States,*
    374 F. Supp. 363 (D.D.C. 1974),
    *vacated and remanded on other grounds,* 425 U.S. 130 (1976)......................6 n.1

*Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.,*
    331 U.S. 519 (1947)........................................................................................10

*Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell,*
    260 F.R.D. 1 (D.D.C. 2009)...............................................................................8

*Blanding v. Du Bose,*
    454 U.S. 393 (1982)........................................................................................15

*Bossier Parish Sch. Bd. v. Reno,*
    157 F.R.D. 133 (D.D.C. 1994)......................................................................6 n.1

*Brooks v. Miller,*
    158 F.3d 1230 (11th Cir. 1998) ......................................................................15

*Building & Constr. Trades Dep't v. Reich,*
    40 F.3d 1275 (D.C.Cir. 1994)..........................................................................17

*Chiles v. Thornburgh,*
    865 F.2d 1197 (11th Cir. 1989) ..............................................................8

*City of Cleveland v. Nuclear Regulatory Comm'n,*
    17 F.3d 1515 (D.C. Cir. 1994)..............................................................17

*City of Lockhart v. United States,*
    460 U.S. 125 (1983)..........................................................................6 n.1, 15

*City of Petersburg v. United States,*
    354 F. Supp. 1021 (D.D.C. 1972), *aff'd,* 410 U.S. 962 (1973) .........................6 n.1

*City of Richmond v. United States,*
    376 F. Supp. 1344 (D.D.C. 1974),
    *vacated and remanded on other grounds,* 422 U.S. 358 (1975).....................6 n.1

*Commack Self-Service Kosher Meats, Inc. v. Rubin,*
    170 F.R.D. 93 (E.D.N.Y. 1996) .......................................................16

*Cook v. Boorstin,*
    763 F.2d 1462 (D.C. Cir. 1985) .......................................................8

*County Council of Sumter County v. United States,*
    555 F. Supp. 694 (D.D.C. 1983) ........................................6 n.1, 15, 16

*County of San Miguel v. MacDonald,*
    244 F.R.D. 36 (D.D.C.2007)..............................................................12

*Crow Tribe of Indians v. Norton,*
    No. 02-284, 2006 WL 908048 (D.D.C. April 7, 2006)..........................................8

*Dimond v. Dist. of Columbia,*
    792 F. 2d 179 (D.C. Cir. 1986) ....................................................11, 12

*Donaldson v. United States,*
    400 U.S. 517 (1971)..........................................................................18

*Fiandaca v. Cunningham,*
    827 F.2d 825 (1st Cir. 1987)..............................................................16

*Friends of Animals v. Kempthorne,*
    452 F. Supp. 2d 64 (D.D.C. 2006) .....................................................12

*Fund for Animals v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) .................................................. *passim*

*Gen. Tel. Co. of the Nw. v. EEOC,*
    446 U.S. 318 (1980) ................................................................................................12

*Georgia v. Ashcroft,*
    195 F. Supp. 2d 25 (D.D.C. 2002) ..........................................................................11

*Georgia v. Ashcroft,*
    539 U.S. 461 (2003) ...........................................................................................6 n.1

*German v. Fed. Home Loan Mortgage Corp.,*
    899 F. Supp. 1155 (S.D.N.Y. 1995) ..........................................................................5

*Grutter v. Bollinger,*
    539 U.S. 306 (2003) ................................................................................................14

*Hirshon v. Republic of Bolivia,*
    979 F. Supp. 908 (D.D.C. 1997) ...............................................................................7

*Huron Envtl. Activist League v. U.S. Envtl. Protection Agency,*
    917 F. Supp. 34 (D.D.C. 1996) ...............................................................................19

*In re Sierra Club,*
    945 F.2d 776 (4th Cir. 1991) ...........................................................................13 n.2

*Jones v. Prince George's County,*
    348 F.3d 1014 (D.C. Cir. 2003) ................................................................................6

*Military Toxics Project v. Envtl. Prot. Agency,*
    146 F.3d 948 (D.C.Cir.1998) ..................................................................................17

*Mova Pharm. Corp. v. Shalala,*
    140 F.3d 1060 (D.C. Cir. 1998) ........................................................................7, 17

*Nash v. Blunt,*
    140 F.R.D. 400 (W.D.Mo. 1992), *summarily aff'd sub nom.*
    *African Am. Voting Rights Legal Def. Fund v. Blunt,* 507 U.S. 1015 (1993) ........16

*Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.,*
    205 F.R.D. 1 (D.D.C. 2000) ......................................................................................8

*Natural Res. Def. Council v. Costle,*
    561 F.2d 904 (D.C. Cir. 1977) ..........................................................................11, 12

*Natural Res. Def. Council v. U.S. Envtl. Prot. Agency,*
    99 F.R.D. 607 (D.D.C. 1983) ..................................................................................13

iv

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ..................................................................... *passim*

*Nw. Austin Mun. Util. Dist. No. One v. Holder,*
    129 S. Ct. 2504 (2009) ...........................................................................5, 10, 20

*Nw. Austin Mun. Util. Dist. No. One v. Mukasey,*
    573 F. Supp. 2d 221 (D.D.C. 2008) ........................................................................5

*N.Y. Pub. Interest Research Group, Inc. v. Regents of the Univ. of the*
    State of N.Y., 516 F.2d 350 (2d Cir. 1975) ....................................................13 n.2

*N.Y. State v. United States,*
    65 F.R.D. 10 (D.D.C. 1974) .................................................................................6 n.1

*People for the Ethical Treatment of Animals v. Babbitt,*
    151 F.R.D. 6 (D.D.C. 1993) ...................................................................................12

*Rio Grande Pipeline Co. v. Fed. Energy Regulatory Comm'n,*
    178 F.3d 533 (D.C. Cir. 1999) ...............................................................................17

*Roeder v. Islamic Republic of Iran,*
    333 F.3d 228 (D.C. Cir. 2003) .................................................................................7

*S. Christian Leadership Conference v. Kelley,*
    747 F.2d 777 (D.C. Cir. 1984) ...............................................................................17

*S. Utah Wilderness v. Norton,*
    No. 01-2518, 2002 WL 32617198 (D.D.C. June 28, 2002)....................................8

*Sackmann v. Ligget Group,*
    167 F.R.D. 6 (E.D.N.Y. 1996) ...............................................................................19

*Sandusky County Democratic Party v. Blackwell,*
    387 F.3d 565 (6th Cir. 2004) ..................................................................................16

*Smith v. Cobb County Bd. of Elections & Registrations,*
    314 F. Supp. 2d 1274 (N.D. Georgia 2002)......................................................6 n.1

*Smoke v. Norton,*
    252 F.3d 468 (D.C. Cir. 2001) .................................................................................7

*Smuck v. Hobson,*
    408 F.2d 175 (D.C. Cir.1969) .................................................................................12

*Tachiona v. Mugabe,*
    186 F. Supp. 2d 383 (S.D.N.Y. 2002)......................................................................4

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972)................................................................................. *passim*

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe,*
    164 F.3d 1080 (8th Cir. 1999) ..............................................................................4

*United States v. Philip Morris USA,Inc.*
    566 F.3d 1095 (D.C. Cir. 2009) ..........................................................................18

*Virginia v. Reno,*
    117 F. Supp. 2d 46 (D.D.C. 2000) ..................................................................6 n.1

*Wash. Mut., Inc. v. F.D.I.C.,*
    59 F. Supp. 2d 152 (D.D.C. 2009) ......................................................................12

*Wilderness Soc'y v. Babbitt,*
    104 F. Supp. 2d 10 (D.D.C. 2000) ........................................................................4

*Young v. Fordice,*
    520 U.S. 273 (1997)............................................................................................15

## DOCKETED CASES

*La. House of Representatives v. Ashcroft,*
    Civ. No. 02-62 (D.D.C. June 6, 2002) ..........................................................6 n.1, 15

*United States v. N.Y. City Bd. of Educ.,*
    No. 96-CV-0374 (E.D.N.Y. Sept. 11, 2006)..........................................................14

## OTHER AUTHORITIES

42 U.S.C. § 1973c ..................................................................................................1

Fed. R. Civ. P. 24(a)(2)................................................................................. *passim*

Fed. R. Civ. P. 24(b) ..............................................................................................18

Fed. R. Civ. P. 24(b)(1) ................................................................................3, 4, 19

Fed. R. Civ. P. 24(b)(3) ........................................................................................19

7C Charles Alan Wright, Arthur Miller and Mary Kay Kane,
 *Federal Practice and Procedure* § 1908 (2d ed. 1986)....................................8, 11

Transcript of Oral Argument,
 *Nw. Austin Mun. Util. Dist. No. One*, 129 S. Ct. 2504 (No. 08-322) ...................15

Letter from Loretta King, Acting Assistant Attorney General, U.S. Department of
 Justice to the Honorable Thurbert E. Baker, Attorney General, State of Georgia
 (May 29, 2009), *available at* http://www.justice.gov/crt/voting/sec_5/
 pdfs/l_052909.pdf. ..................................................................................................3

Concerned Black Clergy of Metropolitan Atlanta, the Southern Regional Office of the Rainbow PUSH Coalition, Michael B. Wright, Sr., and Janice Mathis (collectively, "Proposed Intervenors"), by their undersigned counsel, respectfully submit this statement of points and authorities in support of their motion to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure or, alternatively, for permissive intervention pursuant to Rule 24(b)(1).

## PRELIMINARY STATEMENT

The State of Georgia filed this action on June 22, 2010, seeking judicial preclearance of a voting change pursuant to Section 5 of the Voting Rights Act of 1965 (VRA), 42 U.S.C. §1973c. In the alternative, Plaintiff challenges the constitutionality of Section 5 as it is applied to Georgia. This motion to intervene is filed on behalf of registered Black voters in the State of Georgia and organizations that represent the interests of registered and prospective voters that hold a direct and substantial interest in the outcome of this action. Proposed Intervenors are members of a class that the VRA was designed to protect and organizations whose members belong to such class.

Proposed Intervenors Wright and Mathis are African-American residents and registered voters of Georgia. Proposed Intervenor Concerned Black Clergy of Metropolitan Atlanta ("CBCMA"), located in Atlanta, Georgia, is a nonprofit, nonpartisan organization under section 501(c)(3) of the Internal Revenue Code. CBCMA was formed in 1983 and is comprised of 150 church congregations and thousands of community activists, clergymen, and concerned citizens. CBCMA addresses a host of issues affecting the African American community, including political participation and empowerment, homelessness, hunger, housing, economic development, and health care. CBCMA also provides a community forum where issues affecting the lives of Black and other oppressed people are shared, resources are identified, and resolutions are sought to address specific

1

needs. CBCMA has held and sponsored voter registration and voter education activities for several years, and has been credited with registering tens of thousands of voters in the state. CBCMA's members are African American and other minority residents of Georgia.

 Proposed Intervenor the Southern Regional Office of the Rainbow PUSH Coalition ("Rainbow PUSH"), is the Atlanta office of a nonprofit, nonpartisan multi-racial membership organization and is located in Atlanta, Georgia. For more than forty years, Rainbow PUSH has worked to encourage and empower African American political participation. In addition to its Atlanta office, Rainbow PUSH has chapters in Clayton, Macon, Augusta, Athens and Columbus counties. Rainbow PUSH conducts numerous voter registration drives throughout Georgia, including regular registration activities at Georgia high schools and colleges. In 2005, Rainbow PUSH organized "Keep the Vote Alive," a demonstration in Atlanta aimed at educating voters about the continuing need for the protections of the Voting Rights Act. Over 15,000 people attended the event, making it one of the largest demonstrations in Atlanta history. Rainbow PUSH's members include Georgia residents and Black registered voters in Georgia.

Proposed Intervenors are dedicated to vigorously defending the voting rights of Black residents and registered voters in Georgia. Proposed Intervenors seek to have the VRA's provisions enforced in accordance with congressional intent and to ensure that its constitutionality is upheld.

This Motion is made with Proposed Intervenors' understanding of this Court's interest in the efficient disposition of the proceedings in this matter. To that end, Intervenors are committed to (i) participating in the action on the same schedule established for existing parties; (ii) avoiding delays or the unnecessary duplication of efforts in areas satisfactorily addressed and represented by the

Defendant, to the extent possible; and (iii) coordinating future proceedings with the parties to the extent possible.

Proposed Intervenors possess direct, substantial, and legally protectable interests in the subject matter of this litigation that may not be adequately represented by Defendant Attorney General Holder or the Plaintiff. Because the Proposed Intervenors meet all requirements for intervention as of right under Rule 24(a)(2), this motion should be granted. In the alternative, the facts and circumstances of the case warrant permissive intervention pursuant to Rule 24(b)(1).

## FACTUAL BACKGROUND

Because of its long and unremitting history of discrimination in voting, which continues to this day, Georgia is covered in its entirety by Section 5 of the VRA. As a result, Georgia is required to submit all of its voting changes for administrative or judicial preclearance before they can take effect.

On June 22, 2010, Plaintiff brought this declaratory judgment action seeking judicial preclearance of an unreliable database matching program, even though enacting this measure would have a retrogressive effect on racial minorities in Georgia. Indeed, Plaintiff previously sought administrative preclearance of its database matching program and was unsuccessful. *See* Letter from Loretta King, Acting Assistant Attorney General, U.S. Department of Justice to the Honorable Thurbert E. Baker, Attorney General, State of Georgia (May 29, 2009), *available at* http://www.justice.gov/crt/voting/sec_5/pdfs/l_052909.pdf.

Plaintiff now seeks this Court's approval of its discriminatory and unreliable database matching program by simply asserting that the program will not "lead to a 'retrogression' in the position of racial minorities in that it does not have the effect of denying or abridging the right to

3

vote on account of race or color." Compl. ¶ 65.  In the alternative, Plaintiff alleges that Section 5 is

unconstitutional. Compl. ¶ 72.

For these reasons, and those stated below, intervention here is appropriate as of right

pursuant to Fed. R. Civ. P. 24(a)(2) or, in the alternative, permissively pursuant to Fed. R. Civ. P.

24(b)(1).

## ARGUMENT

### I.      Proposed Intervenors Should be Permitted to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a)

Federal Rule of Civil Procedure 24(a), concerning intervention as a matter of right, states:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  Proposed Intervenors satisfy the requirements to intervene as of right pursuant

to Fed. R. Civ. P. 24(a)(2).  Federal courts, including those in the D.C. Circuit, have emphasized that

Rule 24's intervention requirements should be construed flexibly and in favor of intervention.  *See,*

*e.g.*, *Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (recognizing need for liberal

application of the rules permitting intervention as of right); *Am. Horse Prot. Ass'n, Inc. v. Veneman*,

200 F.R.D. 153, 157 (D.D.C. 2001) (noting the "liberal and forgiving" nature of the interest prong of

the intervention as of right test); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000)

(recognizing D.C. Circuit's liberal approach to intervention).  *See also Tachiona v. Mugabe*, 186 F.

Supp. 2d 383, 394 (S.D.N.Y. 2002) (describing Rule 24 intervention standard as "a flexible and

discretionary one"); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 should be construed liberally, and doubts resolved in favor of the proposed intervenor."); *German v. Fed. Home Loan Mortgage Corp.*, 899 F. Supp. 1155, 1166 (S.D.N.Y. 1995) (recognizing the liberal construction of intervention requirements).

Proposed Intervenors' Motion comfortably satisfies Rule 24(a)(2)'s requirements for intervention as of right, as it is timely and because Proposed Intervenors have direct and significant interests in this action that cannot be adequately protected by the current parties to the litigation. *See Am. Horse Prot. Ass'n,* 200 F.R.D. at 157. Taken together, these considerations strongly counsel in favor of granting the Proposed Intervenors' Motion as of right pursuant to Rule 24(a)(2).

### A. As a General Matter, Courts Recognize the Particular Significance of Rule 24 Intervention in Voting Rights Cases

This Court routinely grants intervention in voting rights cases to Black and other minority voters and organizations, recognizing that the intended beneficiaries of the VRA share important interests and can offer important perspectives that bear on questions concerning the proper interpretation of and continuing need for the VRA's voter protection provisions. This Court has also recognized that the interests of minority voters may diverge from the positions of institutional parties, such as the United States. Intervention has been permitted in a broad range of voting matters, including declaratory judgment actions and matters challenging the constitutionality of Section 5. *See*, *e.g.*, *Nw. Austin Mun. Util. Dist. No. One  v. Mukasey*, 573 F. Supp. 2d 221, 230 (D.D.C. 2008) (granting multiple motions to intervene presented by African-American, Latino and other minority voters in case seeking bailout under section 4(a) of the VRA and challenging the constitutionality of section 5 of the VRA); *see also Nw. Austin Mun. Util. Dist. No. One v. Holder,*

129 S. Ct. 2504 (2009) (No. 08-322) (the United States divides Supreme Court oral argument with NAACP LDF, Inc.; counsel arguing on behalf of intervenors).[1]

Accordingly, the practice in this district, and others, is to recognize the vital interests of intervening minority voters in VRA challenges.

**B. Proposed Intervenors Satisfy the Requirements to Intervene as of Right Pursuant to Rule 24(a)(2)**

Under Rule 24(a)(2), qualification for intervention as of right depends on four factors:  (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction that is the subject of the action"; (3) whether the applicant "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) whether "existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  *See Fund for Animals v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *see also Jones v. Prince George's*

---

[1] For additional examples of voting rights cases in which motions to intervene have been granted by this Court, *see La. House of Representatives v. Ashcroft*, Civ. No. 02-62 (D.D.C. June 6, 2002) (granting coalition of organizations, African-Americans, and other voters' motion to intervene in a Section 5 declaratory judgment action seeking preclearance of redistricting plan where constitutional claims were asserted; voters were represented by the NAACP Legal Defense and Educational Fund, Inc.); *N.Y. State v. United States*, 65 F.R.D. 10, 12 (D.D.C. 1974)(NAACP Legal Defense and Educational Fund, Inc. represented intervening organization); *Beer v. United States*, 374 F. Supp. 363, 367 n.5 (D.D.C. 1974), *vacated on other grounds*, 425 U.S. 130 (1976)(NAACP Legal Defense and Educational Fund, Inc. represented intervening voters); *Virginia v. Reno*, 117 F. Supp. 2d 46 (D.D.C. 2000) (NAACP Legal Defense and Educational Fund, Inc. represented intervening voters); *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (upholding D.C. District Court's grant to private parties' motion to intervene on grounds that intervenors' interests were not adequately represented by the existing parties and finding that, as general matter, private parties may intervene in Section 5 declaratory judgment actions where they meet the requirements of Rule 24); *Smith v. Cobb County Bd. of Elections and Registrations*, 314 F. Supp. 2d 1274, 1311 (N.D. Georgia 2002) (African-American voters were entitled to intervene in suit concerning reapportionment of districts since they asserted a legitimate interest that was not adequately represented by any of the parties); *Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994) (granting intervention to African-American voters from Texas in declaratory judgment action concerning Section 5 of the Act); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983) (noting intervention of Hispanic voters); *County Council of Sumter County v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983) (granting intervention to African-American voters in Section 5 declaratory judgment action); *City of Richmond v. United States*, 376 F. Supp. 1344, 1349 n.23 (D.D.C. 1974), *vacated on other grounds*, 422 U.S. 358 (1975); *City of Petersburg v. United States*, 354 F. Supp. 1021, 1024 (D.D.C. 1972), *aff'd*, 410 U.S. 962 (1973); The grants of intervention to minority voters in these cases are informed by the holding in *Allen v. State Bd. of Elections*, which found an implied cause of action for private citizens to bring suits enforcing Section 5 of the VRA because they were beneficiaries of the Act. 393 U.S. 544, 557 (1969)("[t]he guarantee of § 5 . . . might well prove an empty promise unless the private citizen were allowed to seek judicial enforcement of the prohibition")(NAACP Legal

*County*, 348 F.3d 1014, 1017 (D.C. Cir. 2003); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998).  In addition, under Rule  24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution.

### 1.  Proposed Intervenors' Motion Is Timely

Plaintiff filed its complaint on June 22, 2010.  This Court held a scheduling conference on July 9, 2010 and issued a scheduling order on July 12, 2010.  Proposed Intervenors submit this motion less than one month after the court issued its initial scheduling order and shortly after Plaintiff filed its Complaint, plainly satisfying the timeliness standard, which is measured by when the prospective intervenor "knew or should have known that any of its rights would be directly affected by the litigation."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003)(internal citations and quotation marks omitted).  Courts assess timeliness by considering factors such as the applicant's interest in the case, the need for intervention to preserve the applicant's rights, the extent of prejudice to the existing parties, the extent of prejudice to the Proposed Intervenor if the application is denied, and any unusual circumstances in favor of or opposed to intervention.  *See Smoke v. Norton,* 252 F.3d 468, 470-471 (D.C. Cir. 2001) (setting forth timeliness factors); *Hirshon v. Republic of Bolivia*, 979 F. Supp. 908, 913 n.5 (D.D.C. 1997).

Proposed Intervenors submit this Motion in advance of the Defendant's Answer and well before the commencement of discovery, the filing of dispositive motions, or any of the deadlines set forth by this court in its July 12, 2010 Scheduling Order.  Under these circumstances, this Motion is timely and granting intervention pursuant to Rule 24(a)(2) would not prejudice the existing parties, alter the court's discovery, or alter any oral argument or hearing date that may be set by the court.

---

Defense and Educational Fund, Inc. represented appellant).

*See e.g.*, *Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 260 F.R.D. 1, 4 (D.D.C. 2009) (memorandum opinion) (intervening motion filed fifteen months after commencement of litigation is timely); *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.* 205 F. R. D. 1, 6 (D.D.C. 2000) (memorandum opinion) (intervention motion six months after filing of action is timely). *But cf. Crow Tribe of Indians v. Norton,* No. 02-284, 2006 WL 908048 (D.D.C. April 7, 2006) (rejecting motion to intervene filed 4 years after filing of Complaint and 2 months after execution of settlement agreement).

### 2. Intervenors Have Direct, Substantial, and Legally Protectable Interests

The test for determining the sufficiency of intervenors' interest is not stringent and "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (internal citations and quotation marks omitted). *See also S. Utah Wilderness v. Norton*, No. 01-2518, 2002 WL 32617198, *5 (D.D.C. June 28, 2002) (applying a "liberal approach" to the Rule 24(a) analysis).

Here, Proposed Intervenors have direct, substantial, and legally protectable interests in this action. They have a direct interest in ensuring that the Section 5 preclearance provision is interpreted in a way that does not undermine the constitutional guarantees of the right to vote for minority voters in Georgia. Proposed Intervenors also have a direct interest in ensuring that Section 5 is upheld against Plaintiff's constitutional challenge.

Courts have held that, in cases involving constitutional challenges to a particular statutory scheme, "the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles v. Thornburg,* 865 F.2d 1197, 1214 (11th Cir. 1989) (*quoting* 7C Charles Alan

Wright, Arthur Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1908, at 285 (2d ed.1986)).  Here, Proposed Intervenors seek to ensure that this Court's analysis of Plaintiff's claims takes into account the relevant history and modern day impact of voting discrimination against Blacks and other minority voters in Georgia and the evidence of discrimination that was compiled by Congress during the 2006 reauthorization of Section 5.  The experience and perspective of Proposed Intervenors are relevant to this Court's assessment and analysis of Plaintiff's claims concerning the retrogressive effect of the proposed change and the constitutionality of Section 5.

For all the reasons identified above, Proposed Intervenors have a cognizable interest in this action as the issues presented bear directly on their federally-protected voting rights and the rights of their current and future members.

### 3.  Proposed Intervenors' Interests May Be Impaired By the Disposition of the Litigation

The disposition of this action will depend upon whether this Court finds that Georgia's proposed database matching program is discriminatory against Black voters in Georgia and should, consequently, be denied preclearance and legal implementation.  If this Court finds that the proposed "voter verification" process is retrogressive, Plaintiff alternatively seeks a review by this Court of the constitutionality of Section 5.  The disposition of both questions will have a substantial impact on Proposed Intervenors' voting rights.

Proposed Intervenors have a strong interest in preventing Georgia from implementing discriminatory voting changes, such as the discriminatory and unreliable database matching program at issue here.  Proposed Intervenors also have a substantial interest in the disposition of Plaintiff's alternative relief because it would significantly compromise the Proposed Intervenors' guarantees under the Fourteenth and Fifteenth Amendments, which are protected by this core federal civil rights

legislation.  In addition, if Plaintiff is not subject to Section 5, Proposed Intervenors and others similarly situated in the State of Georgia would bear the  burden of bringing litigation on their own to protect themselves from discriminatory voting laws.

Indeed, just last year, the United States Supreme Court observed  that the Voting Rights Act's protections are still necessary, recognizing that  "racial discrimination and racially polarized voting are not ancient history.  Much remains to be done to ensure that citizens of all races have equal opportunity to share and participate in our democratic processes and traditions. . . ." *Bartlett v. Strickland*, 129 S. Ct. 1231, 1249 (2009)(Kennedy, J.).   The Supreme Court also recently recognized the role of the VRA in safeguarding the rights of minority voters.  *Nw. Austin Mun. Util. Dist.  No. One v. Holder*, 129 S. Ct. at 2506 (noting that the "improvements are no doubt due in significant part to the Voting Rights Act itself, and stand as a monument to its success").

In an analogous context, where a jurisdiction seeks to bailout or terminate its section 5-covered status pursuant to Section 4(a)(4), minority voters have an unconditional right to intervene. While that statutory right is not directly applicable here, the reasoning and logic underlying the rule applies *a fortiori* where a jurisdiction seeks to terminate the operation of Section 5, by arguing that the reauthorization of Section 5 was unconstitutional.  *See e.g., Bhd. of  R.R. Trainmen v. Baltimore & Ohio R.R. Co.,* 331 U.S. 519, 529, 531 (1947) (Where Congress has provided an "unmistakable" and "unconditional" right to intervene, "there is no room for the operation of a court's discretion."). Finally, given that courts routinely permit intervention even where an interested party retains the capacity to bring subsequent litigation to vindicate its interests, *see, e.g., Akiachak Native Cmty. v. Dep't of the Interior*, 584 F. Supp. 2d 1, 6-7 (D.D.C. 2008) (citing *Fund For Animals*, 322 F.3d at

735), the permanent impairment to Proposed Intervenors' voting rights that would result from any adverse ruling justifies intervention here.

### 4. Intervenors' Interests May Not Be Adequately Represented By the Present Parties

Proposed Intervenors have the right to intervene "unless existing parties adequately represent [their] interest[s]." Fed. R. Civ. P. 24(a)(2). Proposed Intervenors' burden on this point is not onerous, and is satisfied by a showing that the representation of their interests by the present parties "*may* be inadequate, not that representation will in fact be inadequate." *See Dimond v. Dist. of Columbia,* 792 F. 2d 179, 192 (D.C. Cir. 1986) (emphasis added, internal quotations omitted); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (showing burden should be treated as minimal); *accord Natural Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977); *see also Georgia v. Ashcroft,* 195 F. Supp. 2d 25 (D.D.C. 2002) (where three-judge panel in state redistricting declaratory judgment action granted intervention to African-American voters pursuant to Fed. R. Civ. P. 24(a)(2)); Wright, et. al., *supra*, § 1909 (an applicant ordinarily should be permitted to intervene as of right "unless it is *clear* that the party will provide adequate representation for the absentee" (emphasis added)). Even "a partial congruence of interests" is insufficient to "guarantee the adequacy of representation." *Fund for Animals*, 322 F.3d at 737.

Proposed Intervenors meet that burden here. The interests of Proposed Intervenors may not be adequately protected by the existing Defendant, Attorney General Holder. The Defendant simply does not have the same stake as do Proposed Intervenors, the intended beneficiaries of the VRA, whose voting rights could be adversely impacted by an adverse ruling on any of Plaintiff's claims in this matter. Further, courts—recognizing that the government must necessarily address the needs of diverse, and sometimes conflicting, groups of citizens—have frequently found that the United States

and other governmental entities cannot, within the meaning of Rule 24(a)(2), "adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736.  Government entities are charged with "represent[ing] the interests of the American people," whereas aspiring intervenors, as here, are dedicated to representing their personal interests.  *Id.*; *see also Natural Res. Def. Council*, 561 F.2d at 912-13; *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969); *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006).

An overlap in interests or a general agreement in principles between Proposed Intervenors and the Government, moreover, is insufficient to find that Proposed Intervenors' interests will be adequately represented by the Government.  Even "a shared general agreement…does not necessarily ensure agreement in all particular respects." *Fund for Animals*, 322 F.3d at 737 (quoting *Natural Res. Def. Council*, 561 F.2d at 912) (internal quotation marks omitted).  *See also Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980) (granting individual aggrieved party's motion to intervene in order to protect their personal interests, which may at times be in conflict with those of the EEOC); *Nuesse*, 385 F.2d at 702-04; *Wash. Mut., Inc. v. F.D.I.C.*, 659 F. Supp. 2d 152, 155 (D.D.C. 2009) (although government's and movant bank's positions were similar, permitting intervention because government did not adequately represent bank's interests); *County of San Miguel v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007) (cattleman's association aligned in interest with Department of Interior permitted to intervene because its interests were not adequately represented by U.S. government); *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) (government tasked with enforcing regulatory scheme cannot adequately represent private party's interest); *accord Dimond*, 792 F.2d at 192 (private party seeking to protect its financial interest allowed to intervene despite presence of government which represented general public

interest); *Natural Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (pesticide manufacturers allowed to intervene because even though both EPA and intervenors wanted to uphold regulations, their interests cannot always be expected to coincide, and because the court recognized that the "EPA represents the public interest not solely that of the. . .industry").[2]

In *Trbovich*, the Supreme Court allowed intervention by a union member in an action brought by the Secretary of Labor even though the Secretary was broadly charged with protecting the public interest.  The Court reasoned that the Secretary of Labor protects not only the rights of individual union members but also the public interest, two functions which "may not always dictate precisely the same approach to the conduct of the litigation."  404 U.S. at 539.  Therefore, under the prevailing standard set forth by the Court in *Trbovich*, the adequacy of representation requirement of Rule 24 is satisfied by a mere showing that representation of one's interest "may be" inadequate; and the burden of making that showing should be treated as minimal. *Id*. at 538 n.10.  Proposed Intervenors, whose voting rights are tied to continued enforcement of the VRA's provisions, therefore, should be permitted to intervene so that they will not be subject to the uncertainties associated with how vigorously the United States will defend the constitutionality of Section 5 and whether, or how, the United States and its agencies will present arguments concerning the

---

[2]  Indeed, other courts have also recognized that governmental entities often do not adequately represent the interests of individual aggrieved parties. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (state "cannot be an adequate representative of environmental groups"); *N.Y. Pub. Interest Research Group, Inc. v. Regents of the Univ. of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (pharmacists allowed to intervene in challenge by consumer group to enjoin the Regents' enforcement of statewide regulation because "there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the Regents"); *Associated Gen. Contractors of Conn., Inc. v. City of New Haven*, 130 F.R.D. 4, 11 (D. Conn. 1990) (minority contractors allowed to intervene in challenge to minority set-aside program because it was "sufficiently shown that as a minority contractor, its interest in the set-aside is compelling economically and thus distinct from that of the City" also defending the program).

retrogressive effect or otherwise discriminatory aspects of Georgia's proposed database matching program.

Moreover, federal agencies can revise a litigation strategy or theory of the case mid-course, or abandon a prior institutional position altogether in matters that implicate the nexus between civil rights and constitutional guarantees. *See e.g., United States v. N.Y. City Bd. of Educ.*, No. 96-CV-0374 (FB)(RML) (E.D.N.Y. Sept. 11, 2006), slip op. at 5, 31 (after bringing action challenging "three entry-level examinations that the Board had administered, as well as the recruiting practices that it had used to publicize those exams, [as] violating Title VII," United States entered into a Settlement Agreement "that awarded employment benefits to a group of 59 individuals (the 'beneficiaries') composed of [B]lack, Hispanic and Asian men and women, and non-minority females"; however, "[i]n April, 2002 . . . the United States decided that it would no longer defend the lawfulness of the Agreement's remedies for those beneficiaries who had not taken any of the challenged exams"); *Grutter v. Bollinger*, 539 U.S. 306 (2003) (despite role in prohibiting discrimination of the basis of race, color, or national origin, United States reversed course and took position opposing affirmative action program). This risk makes it difficult for the VRA's intended beneficiaries to rely exclusively on Defendant Attorney General Holder to both consistently and adequately defend their cognizable interests here.

Proposed Intervenors easily meet the "minimal' burden, set forth in *Trbovich*, of showing inadequacy of representation. The United States and private minority voters have diverged on the appropriate strategies for ensuring the protection of minority voting rights. In *Nw. Austin Mun. Util. Dist. No. One*, for instance, Defendant Intervenors emphasized different aspects of the Congressional record and presented arguments and evidence that supplemented those provided by

the Attorney General in its defense of Section 5. The brief filed by those Defendant Intervenors in the Supreme Court was repeatedly referenced at oral argument in the Supreme Court. Transcript of Oral Argument at 55, 57, *Nw. Austin Mun. Util. Dist. No. One*, 129 S. Ct. 2504 (No. 08-322).  In *La. House of Representatives*, Attorney General John Ashcroft opposed a declaratory judgment on grounds far more narrow than those advanced by Defendant Intervenors.  In particular, intervenors argued that the redistricting plan at issue evidenced retrogression in four distinct areas of the state going well beyond the single district deemed to evidence retrogression within the meaning of Section 5 by Defendant Ashcroft.

Other examples exist as well.  In *City of Lockhart*, 460 U.S. at 130, the minority intervenors presented the sole argument in the Supreme Court on behalf of the appellees while the United States stood in support of the appellants.  In *Blanding v. DuBose*, 454 U.S. 393, 398 (1982), the minority plaintiffs, but not the United States, appealed and prevailed in a voting rights suit in the Supreme Court.  In *County Council of Sumter County*, 555 F. Supp. at 696, the United States and African-American intervenors took conflicting positions regarding the application of Section 2 in the Section 5 preclearance process.  In *Brooks v. Miller*, 158 F.3d 1230, 1233 (11th Cir. 1998), both minority plaintiffs and the United States filed similar actions challenging Georgia's adoption of a statewide majority-vote requirement.  Although the cases were consolidated, the United States unilaterally dismissed its action prior to trial.  In *Young v. Fordice*, 520 U.S. 273, 281 (1997), the United States opted not to appeal a lower court's adverse ruling, leaving only the private plaintiffs to appeal to the U.S. Supreme Court and win reversal. Thus, while Defendant Attorney General Holder's obligation is to represent the broad interests of the United States, Proposed Intervenors are

specifically concerned with the interests of Black voters in Georgia who are, ultimately, the target of Plaintiff's Complaint.

Proposed Intervenors also have intimate knowledge and significant experience with registering voters in Georgia. Indeed, Proposed Intervenors inevitably bring to the litigation a "local perspective on the current and historical facts at issue" which could not otherwise be presented and which could benefit the court's understanding of the claims. *County Council of Sumter County,* 555 F. Supp. at 697. *See also Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (granting individual voters' motion to intervene in HAVA suit); *Commack Self-Service Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93 (E.D.N.Y. 1996); (noting that intervenors would bring a different perspective to the case that might assist the court, and that intervention came early in the action); *Fiandaca v. Cunningham*, 827 F.2d 825, 835 (1st Cir. 1987) (likelihood that applicants would introduce additional evidence favors intervention). Intervention is warranted, therefore, because the interests of intended beneficiaries and the agencies responsible for administering the statutes designed to protect them are not necessarily coextensive and this divergence often affects the course of litigation.

As Proposed Intervenors have demonstrated above, even if Defendant Attorney General Holder appropriately opposes preclearance of the proposed voting change and aggressively defends the constitutionality of Section 5, the effort to represent Proposed Intervenors' distinct interests *may* nevertheless, ultimately prove inadequate. Indeed, "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse*, 385 F.2d at 703. *Nash v. Blunt,* 140 F.R.D. 400, 402 (W.D. Mo. 1992) ("it is normal practice in reapportionment controversies to allow intervention of voters...supporting a

16

position that could theoretically be adequately represented by public officials"), *summarily aff'd sub nom. African-American Voting Rights Legal Defense Fund, Inc. v. Blunt,* 507 U.S. 1015 (1993).  For all of the reasons stated above, the Proposed Intervenors have made a sufficient showing that the existing Defendant *may* not be an adequate representative of their interests.

### 5.   Proposed Intervenors Satisfy the Requirements of Article III Standing

Because Proposed Intervenors seek to participate on "an equal footing with the original parties to the suit, [they] must satisfy the standing requirements imposed on [all] parties."  *City of Cleveland v. Nuclear Regulatory Comm'n,* 17 F.3d 1515, 1517 (D.C. Cir. 1994).  As set forth above, Proposed Intervenors indeed have a concrete and cognizable interest in this litigation that, under circuit precedent, satisfy Article III's demands.  *See  e.g.*, *Fund for Animals,* 322 F.3d 728 (finding intervenors satisfied standing requirements because they "would suffer concrete injury if the court granted the relief the petitioners [sought]") (internal citations and quotation marks omitted).  *Cf. S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (stating that Article III's "gloss" on Rule 24 requires an intervenor to have a "legally protectable" interest).  *See also Military Toxics Project v. Envtl. Prot. Agency*, 146 F.3d 948, 953 (D.C. Cir. 1998); *Mova Pharm.*, 140 F.3d at 1074; *Building & Constr. Trades Dep't v. Reich,* 40 F.3d 1275, 1282 (D.C. Cir. 1994); *Rio Grande Pipeline Co. v. Fed. Energy Regulatory Comm'n*, 178 F.3d 533, 538-40 (D.C. Cir. 1999) (*citing City of Cleveland,* 17 F.3d at 1517).

Moreover, Proposed Intervenors' status as "aggrieved parties" is evident.  Proposed Intervenors have a vested interest in preventing the implementation of the state's proposed database matching program that would prevent and frustrate the registration of Black voters in Georgia.  Proposed Intervenors also have an interest in upholding the constitutionality of Section 5.  As a

17

direct and proximate result of Plaintiff's complaint, Proposed Intervenors suffer an imminent threat to their federally protected voting rights and organizational missions. *See Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (imminent harm satisfies the injury-in-fact requirement in suits regarding prospective injury). A favorable ruling from this court, denying Plaintiff's requested relief, would remedy this injury.

Proposed Intervenors also meet the requirements of the Rule's plain text. Intervenors of right need only an "interest" in the litigation—not a "cause of action" or "permission to sue." See Fed. R. Civ. P. 24(a)(2). *See also Trbovich*, 404 U.S. 531-32 (1972) (Court permitted a union member to intervene in a suit brought by the Secretary of Labor even though the applicable federal statute expressly prohibited union members from initiating such actions on their own); *United States v. Phillip Morris USA, Inc.* 566 F.3d 1095, 1145 (D.C. Cir. 2009) (party need not have a "cause of action" in order to satisfy the requirements of Rule 24(a)). As minority voters who reside in the covered jurisdiction at issue in this case, Proposed Intervenors have a "significantly protectable interest" in the outcome of this matter. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Like the private parties in *Allen*, these aggrieved individuals and organizations now seek to intervene in this declaratory judgment suit to defend the status of their federally protected voting rights. For these reasons, Proposed Intervenors have standing to participate in this suit to help inform and shape the Court's disposition of all claims raised by the Plaintiff.

## II.   In the Alternative, Permissive Intervention Is Appropriate in this Case

Rule 24(b) of the Federal Rules of Civil Procedure provides an alternative basis for the Proposed Intervenors' intervention in this action. Under Rule 24(b), the decision to allow permissive intervention is in the discretion of the court. Permissive intervention may be granted,

therefore, when (1) an applicant "has a claim or defense that shares with the main action a common question of law or fact", and (2) intervention will not prejudice the adjudication of rights of the original parties. Fed. R. Civ. P. 24(b)(1), (3). When assessing a motion for permissive intervention, the principal consideration is "whether the intervention will unduly delay or prejudice the existing parties." Fed. R. Civ. P. 24(b)(3); *Sackmann. v. Ligget Group*, 167 F.R.D. 6, 23 (E.D.N.Y 1996); *see also Nuesse*, 385 F.2d at 704 ("[a]lthough the rule speaks in terms of a claim or defense, this is not interpreted strictly so as to preclude permissive intervention"); *Huron Envt'l. Activist League v. United States Envt'l. Protection Agency,* 917 F. Supp. 34, 43 (D.D.C. 1996) (permissive intervention was granted where plaintiffs' claims have both questions of law and fact in common with the main action and the court concluded that the intervention would not unduly delay the adjudication of the rights of the original parties).

Here, the requirements for permissive intervention have been met. Proposed Intervenors' claims have questions of fact and law in common with those already before this court. Proposed Intervenors interest is in defending the voting rights of Black residents and registered voters in Georgia. Proposed Intervenors also seek to have the VRA's provisions enforced in accordance with congressional intent and to ensure that its constitutionality is upheld. Given the unique perspective of Proposed Intervenors with respect to the experiences and registration of Black and other minority voters in Georgia, their intervention in this matter would very likely aid or enhance the Court's understanding of the underlying legal and factual issues and, thereby, assist in the proper resolution of this action. Moreover, intervention in this case will not delay the litigation, as the action has just commenced, Defendants have not filed their answer, discovery has not commenced, dispositive

19

motions have not been filed, oral argument has not been scheduled and Proposed Intervenors agree to participate on the same schedule established for the existing parties.

Finally, counsel for Proposed Intevenors have substantial experience in VRA litigation including, but not limited to, constitutional challenges to the VRA (e.g. as counsel to African-American Intervenors in *NW. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504(2009), a constitutional challenge to the 2006 reauthorization of Section 5 of the VRA), Section 5 declaratory judgment actions before three-judge panels in this Court, and the congressional record that led both to the initial enactment and subsequent reauthorization of the Act.)  Counsel's significant experience provides Proposed Intervenors with competent, effective representation, and will also very likely benefit the Court in the adjudication of the issues presented in this case.

Taken together, these considerations plainly demonstrate the propriety of the Proposed Intervenors' permissive intervention request.  This Court should, therefore, grant the Proposed Intervenors' alternative request for permissive intervention, in the event that the Court declines to grant intervention as of right.

## CONCLUSION

For the reasons set forth above, the motion to intervene should be granted.

August 2, 2010

Respectfully submitted,

/s/ Kristen Clarke
John Payton
  Director-Counsel
Debo P. Adegbile
  Associate Director-Counsel
Ryan P. Haygood
Dale E. Ho
NAACP Legal Defense and
  Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 219-1900

Kristen Clarke  (D.C. Bar No. 973885)
NAACP Legal Defense and
  Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

*Attorneys for Proposed Intervenors*