**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE STATE OF GEORGIA<br><br>*Plaintiff*<br><br>v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States<br><br>*Defendant*<br><br>CONCERNED BLACK CLERGY OF METROPOLITAN ATLANTA, THE SOUTHERN REGIONAL OFFICE OF THE RAINBOW PUSH COALITION, MICHAEL B. WRIGHT, SR., AND JANICE MATHIS<br><br>*Applicants for Intervention* | **Civil Action No. 1:10-CV-01062 (ESH, HHK, TBG)** |

## [PROPOSED] ANSWER OF INTERVENORS CONCERNED BLACK CLERGY OF METROPOLITAN ATLANTA, THE SOUTHERN REGIONAL OFFICE OF THE RAINBOW PUSH COALITION, MICHAEL B. WRIGHT, SR., AND JANICE MATHIS TO COMPLAINT

Concerned Black Clergy of Metropolitan Atlanta, the Southern Regional Office of the Rainbow PUSH Coalition, Michael B. Wright, Sr., and Janice Mathis (hereinafter, "Intervenors"), by undersigned counsel, hereby submit this [Proposed] Answer to the Complaint of Plaintiff State of Georgia, dated June 22, 2010 (the "Complaint"), as follows:

**[Proposed] Answers to Allegations**

1. Intervenors admit the allegations of Paragraph 1 to the extent they describe the statutory basis asserted by Plaintiff for the claims presented in the Complaint. Intervenors deny that Plaintiff is entitled to relief.

2. Intervenors admit the allegations of Paragraph 2 to the extent that the Voting Rights Act ("VRA") authorizes Plaintiff to bring an action seeking preclearance under Section 5 of the VRA before this Court. Intervenors deny that either Section 5 of the VRA or 28 U.S.C. § 2201 authorizes Plaintiff to bring claims presented in the Complaint on behalf of itself or the citizens of the State of Georgia. Intervenors deny the remaining allegations in Paragraph 2.

3. Intervenors admit the allegations of Paragraph 3, except to the extent that it suggests that only Defendant Eric H. Holder, Jr, the Attorney General of the United States, may defend a declaratory judgment action under Section 5 of the VRA in this Court. Intervenors aver that citizens who reside in covered jurisdictions, including citizens of the jurisdictions in the State of Georgia, often participate as defendants in defense of declaratory judgment actions and other matters arising under Section 5 of the VRA.

4. The allegations in Paragraph 4 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the allegations in Paragraph 4 to the extent they accurately quote portions of Section 5 of the VRA, but deny that it quotes the governing provisions of Section 5. Intervenors aver that Paragraph 4 omits the statutory requirement with respect to "denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title . . . .*" (omitted material in italics).

5. The allegations in Paragraph 5 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the allegations in Paragraph 5 to the extent they describe the VRA's Section 4(b) scope of coverage provision, but deny that Plaintiff is "subject to Section 4(b) of the VRA" today solely because of facts present before Congress during its original 1965 enactment.

6. The allegations in Paragraph 6 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the allegations in Paragraph 6 to the extent they describe Georgia as a covered jurisdiction subject to the preclearance requirements of Section 5, but deny that Plaintiff "remains a covered jurisdiction" solely because of facts and data present before Congress during its original 1965 enactment.

7. Intervenors admit the allegations of Paragraph 7 to the extent that it describes the statutory basis asserted by Plaintiff for certain claims presented in the Complaint and characterizes Plaintiff's contentions. Intervenors deny that the voting change at issue in this action "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color." Intervenors deny that Section 5 prevents Plaintiff from "enforc[ing] federal and state laws relating to voter registration and verification." Intervenors deny the remaining allegations in Paragraph 7.

8. Intervenors deny the allegations of Paragraph 8. Intervenors aver that an actual case or controversy exists between the parties only with respect to whether Plaintiff can satisfy its burden of proof with respect to the voting change at issue in this action. Intervenors deny the remaining allegations in Paragraph 8.

9. Intervenors admit the allegations of Paragraph 9.

10. Intervenors admit the allegations of Paragraph 10.

## **FACTS**

### Verification Requirements Under Federal Law

11. The allegations in Paragraph 11 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors aver that the preamble for the Help America Vote Act of 2002 ("HAVA") speaks for itself. Intervenors deny the remaining allegations of this paragraph, except to the extent that the preamble of the Help America Vote Act ("HAVA") refers to "minimum election *administration* standards" (omitted material in italics). Intervenors deny the remaining allegations of this paragraph.

12. The allegations in Paragraph 12 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the allegations in Paragraph 12 to the extent they accurately quote select provisions found within Section 303(a)(5) of HAVA. Intervenors aver that the allegations do not, however, quote or cite other relevant sections of HAVA or 42 U.S.C. § 15483(a)(5). Intervenors also aver that HAVA and its requirements speak for themselves.

13. The allegations in Paragraph 13 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the allegations in Paragraph 13 to the extent they accurately quote 42 U.S.C. § 15483(a)(5)(A)(iii). Intervenors aver that HAVA and its requirements speak for themselves.

14. The allegations in Paragraph 14 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the allegations in Paragraph 14 to the extent they accurately quote 42 U.S.C. § 15483(a)(5)(B)(i). Intervenors aver that HAVA and its requirements speak for themselves.

15. The allegations in Paragraph 15 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the allegations of Paragraph 15 to the extent they make reference, in part, to a Consent Decree issued by the court in *Schwier v. Cox* on June 27, 2006. Intervenors deny the allegations of Paragraph 15 to the extent they contend that the voting change at issue in this case is required by Section 303 of HAVA. Intervenors aver that the allegations of Paragraph 15 do not, however, make reference to other relevant sections of HAVA and the VRA. Intervenors aver that HAVA and the *Schwier v. Cox* Consent Decree speak for themselves.

16. The allegations in Paragraph 16 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors deny that the voting change proffered by Plaintiff and at issue in this action is mandatory under HAVA. Intervenors aver that HAVA and its requirements speak for themselves.

17. The allegations in Paragraph 17 contain statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, upon information and belief, Intervenors deny that Georgia "collected full Social Security numbers from each registrant" prior to the issuance of the June 27, 2006 Consent Decree in *Schwier v. Cox*. Intervenors deny that the voting change at issue in this action is required under HAVA. Intervenors aver that HAVA and the consent decree in *Schwier v. Cox* speak for themselves.

Communications with the Department of Justice

18. Intervenors deny that the verification process submitted by Plaintiff in this action is required by HAVA, including the proposed use of the Georgia Department of Driver Services ("DDS") and Social Security Administration ("SSA") databases. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19. Intervenors admit the allegations in Paragraph 19 to the extent that the Chief of the Voting Section of the Civil Rights Division at the United States Department of Justice sent a letter to the State of Georgia, dated April 23, 2007. Intervenors admit that the April 23, 2007 letter concerned, in part, whether Plaintiff was "matching the last four digits of social security numbers against the SSA database." Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19.

20. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20, except, upon information and belief, Intervenors aver that Georgia officials first directed county boards of registrars to prevent certain persons from voting on or around June 2007.

21. Intervenors admit the allegations in Paragraph 21 to the extent they describe aspects of the procedures Plaintiff identifies as the "Georgia HAVA Verification Process" submitted to the Court in this action. Intervenors deny that the allegations of Paragraph 21 provide a complete description of the voting change at issue in this action. Intervenors aver that the voting changes for which Plaintiff seeks Section 5 preclearance are not required by HAVA. Intervenors deny the remaining allegations in Paragraph 21.

22. Intervenors admit the allegations of Paragraph 22 to the extent that the Department of Justice sent a letter to Georgia's Secretary of State on October 8, 2008. Intervenors admit that the October 8, 2008 letter stated that "verification checks against the SSA records alone over the last fiscal year have extended to nearly two million records from Georgia, far more than any other State in the country. . . . This process of attempting to verify voter registration information and acting upon the results of that process [are] changes affecting voting [and] are covered by the requirements of Section 5 of the Voting Rights Act." Intervenors deny the remaining allegations in Paragraph 22.

23. Intervenors deny the allegations of Paragraph 23, except to the extent that Intervenors admit that *Morales v. Handel*, No. 08-CV-3172 (N.D. Ga.) was filed on October 9, 2008. Intervenors aver that both the original amended complaint in *Morales v. Handel* speak for themselves. Intervenors deny that the voting change (described by Plaintiff as the "verification" process) at issue in *Morales v. Handel* is required under HAVA.

24. Intervenors admit the allegations of Paragraph 24 to the extent that the Department of Justice sent a letter to Georgia's Secretary of State on October 10, 2008. Intervenors admit, upon information and belief, that the October 10, 2008 letter concerned Georgia's SSA database matching program and that letter speaks for itself.

25. Intervenors admit the allegations of Paragraph 23 to the extent that the Georgia Attorney General submitted a letter to the Department of Justice on October 14, 2008 seeking preclearance of a voting change. Intervenors admit that the subject line of the October 14, 2008 letter referenced a "Voter Registration and Citizenship Confirmation Data Matching Verification, Voter Eligibility and Information Use Process." Intervenors admit that the October 14, 2008 letter states that it was Plaintiff's intent "to submit all aspects of this process for review and preclearance by the U.S. Attorney General pursuant to Section 5." Intervenors deny that the voting change submitted to the Department of Justice on October 14, 2008 is required under HAVA. Intervenors deny that the voting change at issue in this action was fully set forth in the letter from the Georgia Attorney General to the Department of Justice on October 14, 2008. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25.

26. Intervenors deny the allegations of Paragraph 26 to the extent they suggest that the voting change at issue in this action was fully set forth and described in the letter from the Georgia

Attorney General to the Department of Justice on October 14, 2008. Intervenors admit the remaining allegations in Paragraph 26.

27. Intervenors admit the allegations of Paragraph 27 except to the extent Paragraph 27 incorporates the term "temporary HAVA verification process." Intervenors aver that the Court in *Morales* described its October 27, 2008 order as a "temporary remedy for the lack of preclearance, unless and until preclearance is obtained under Section 5," and not as a "temporary HAVA verification process" as alleged in Paragraph 27. Intervenors deny that the "supplement[al]" information provided by Plaintiff was sufficient to enable the Attorney General to make a determination as to whether or not the voting change was entitled to preclearance.

28. Intervenors deny the allegations of Paragraph 28 to the extent that Paragraph 28 suggests that the voting change submitted to the Court in this action was fully set forth in the letter from the Georgia Attorney General to the Department of Justice on October 14, 2008, or in the supplemental materials submitted to the Department of Justice as of December 15, 2008. Intervenors admit the allegations of Paragraph 28 to the extent that the Department of Justice sent a letter to Georgia's Secretary of State on December 15, 2008. Intervenors admit that the December 15, 2008 letter stated that the information received from Plaintiff as of December 15, 2008 was "insufficient to enable [the Department] to determine that the proposed changes do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, as required under Section 5." Intervenors deny the remaining allegations of Paragraph 28.

29. Intervenors admit the allegations in Paragraph 29 to the extent that the Georgia Attorney General submitted a letter to Department of Justice on March 24, 2009. Intervenors admit that the March 24, 2009 letter to the Department of Justice stated that the December 15, 2008 letter

was "the State's response to [the Department of Justice's] inquiries." Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29.

30. The allegations in Paragraph 30 contain statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit that the U.S. Attorney General issued an objection pursuant to its authority under Section 5 of the VRA because Plaintiff failed to meet its burden of showing that the proposed voting change referenced in its October 14, 2008 letter did not have a discriminatory purpose or a retrogressive effect on minority voters in the State of Georgia. Intervenors deny the allegations of Paragraph 30 to the extent they suggest that the voting change submitted to the Court in this action was fully set forth in the letter from the Georgia Attorney General to the Department of Justice on October 14, 2008. Intervenors deny the remaining allegations in Paragraph 30.

31. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.

32. Intervenors deny the allegations in Paragraph 32. However, Intervenors admit that the Department of Justice sent a letter to the Georgia Attorney General dated June 16, 2009, attached as Exhibit 3 to Plaintiff's Complaint, and that the letter speaks for itself.

33. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

34. Intervenors admit, upon information and belief, that the Georgia Attorney General submitted a letter to the Department of Justice on August 11, 2009. However, Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.

35. Intervenors admit that the Department of Justice sent a letter to the Georgia Attorney General dated October 13, 2009 denying the Georgia Attorney General's request for reconsideration. Intervenor admits that the October 13, 2009 letter stated that "by the State's own admission, [the August 11, 2009 letter] 'proposes significant changes in the verification process.' . . . [and] the information contained in the state letter is focused on the revised 2009 verification procedure, rather than providing any additional information or arguments to support its request that the original voter verification program should be withdrawn." Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35.

36. Intervenors admit that the Department of Justice sent a letter to the Georgia Attorney General dated October 13, 2009 denying the Georgia Attorney General's request for reconsideration. Intervenors deny the remaining allegations in Paragraph 36.

37. Intervenors admit that the Georgia Attorney General sent a letter to the Department of Justice on December 22, 2009. Intervenors admit that the December 22, 2009 letter stated that "the Secretary believes that sufficient information has been provided to the Department." Intervenors deny the remaining allegations in Paragraph 37.

38. Intervenors deny the allegations of Paragraph 38 to the extent it suggests that the voting change before the Court in this action was fully set forth and described in the letter from the Georgia Attorney General to the Department of Justice on October 14, 2008.

39. The allegations in Paragraph 39 are statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors deny the allegations in Paragraph 39.

40. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40. Intervenors aver that preclearance of an "almost identical process"

in one state is not grounds for preclearance of a separate and independent voting change in another state.

41.     The allegations in Paragraph 41 are statements of law and/or conclusions of law to which no response is required.  If deemed to allege facts, Intervenors admit the factual allegations of Paragraph 41 to the extent they distinguish between the citizenship-related procedures at issue in *Morales* and other procedures at issue in this action.  Intervenors aver that the Court's June 15, 2010 order in *Morales* speaks for itself.   Intervenors deny the remaining allegations of Paragraph 41.

## Expedited Consideration

42.     Intervenors admit the allegations of Paragraph 42.

43.     Intervenors admit the allegations of Paragraph 43.

44.     Intervenors admit the allegations of Paragraph 44.

45.     Intervenors admit the allegations of Paragraph 45 to the extent they describe the relief sought by Plaintiff.  However, Intervenors deny that Plaintiff is entitled to such relief or entitled to expedited consideration of its claims.  Intervenors also aver that any expedited consideration of Plaintiff's claims under Section 5 of the VRA should not limit the opportunity for full discovery and briefing of Plaintiff's claims which implicate the voting rights of registrants throughout the State of Georgia.

## The Georgia HAVA Verification Process Sought to be Precleared

46.     Intervenors admit the allegations of Paragraph 46 to the extent they describe the relief sought by Plaintiff and the procedures Plaintiff proposes to implement in the future.  Intervenors deny that the verification process submitted by Plaintiff in this action is required under HAVA. Intervenors deny the remaining allegations of Paragraph 46.

47. Intervenors admit the allegations in Paragraph 47 to the extent they describe information required by registrants on state-issued voter registration forms.

48. Intervenors admit the allegations of Paragraph 48 to the extent they describe the relief sought by Plaintiff and the procedures Plaintiff proposes to implement in the future. Intervenors deny that the procedures described in Paragraph 48 are reasonably calculated or necessary to verify the information contained on a voter registration application

49. Intervenors admit the allegations of Paragraph 49 to the extent they describe the relief sought by Plaintiff and the procedures Plaintiff proposes to implement in the future. Intervenors deny that the procedures described in Paragraph 49 do not worsen the position of minority voters or violate Section 5 of the VRA.

50. Intervenors admit the allegations of Paragraph 50 to the extent they describe the relief sought by Plaintiff and the procedures Plaintiff proposes to implement in the future. Intervenors deny the remaining allegations of this Paragraph.

## Verification Process for Covered Applicants Who Provide a Georgia Driver's License Number or Georgia DDS ID Number

51. Intervenors admit the allegations of Paragraph 51 to the extent they describe the relief sought by Plaintiff and the procedures Plaintiff proposes to implement in the future. Intervenors deny that the VRA or HAVA require Georgia to conduct a database comparison of citizenship status.

52. Intervenors admit the allegations of Paragraph 52 to the extent they describe the procedures Plaintiff purports to implement in the future. Intervenors deny that the VRA or HAVA requires Georgia to perform an "exact match" of information provided by prospective voter applicants and information maintained in DDS or SSA databases.

53. Intervenors admit the allegations of Paragraph 53 to the extent they describe the procedures Plaintiff proposes to implement in the future. Intervenors deny that the VRA or HAVA require Georgia to prepare an "exceptions report." Intervenors deny the remaining allegations of Paragraph 53.

54. The allegations in Paragraph 54 contain statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the factual allegations of Paragraph 54 to the extent they describe the relief sought by Plaintiff and the procedures Plaintiff proposes to implement in the future. Intervenors deny that O.C.G.A. § 21-2-226 contemplates the verification of a voter's identity. Intervenors deny that the VRA, HAVA, or O.C.G.A. § 21-2-226 requires Georgia to provide an "exceptions report" to county boards of registrars.

<u>Verification Process for Covered Applicants Who Provide Only Last Four Digits of Social Security Number</u>

55. Intervenors admit the allegations of Paragraph 55 to the extent that they describe the procedures Plaintiff seeks to implement in the future. Intervenors deny the remaining allegations of Paragraph 55.

56. Intervenors admit the allegations of Paragraph 56 to the extent that they describe the procedures Plaintiff seeks to implement in the future through the SSA. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56.

57. Intervenors admit the allegations of Paragraph 57 to the extent that they describe the procedures Plaintiff seeks to implement in the future. Intervenors deny the remaining allegations of Paragraph 57.

58. Intervenors admit the allegations of Paragraph 58 to the extent that they describe the procedures Plaintiff seeks to implement in the future. Intervenors deny the remaining allegations of Paragraph 58.

59. The allegations in Paragraph 59 contain statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the factual allegations of Paragraph 54 to the extent they describe the relief sought by Plaintiff and the procedures Plaintiff proposes to implement in the future. Intervenors deny that O.C.G.A. § 21-2-226 contemplates the verification of a voter's identity. Intervenors deny that the VRA, HAVA or O.C.G.A. § 21-2-226 requires Georgia to provide an "exceptions report" to county boards of registrars.

### United State Citizenship Verification Process

60. Intervenors admit the allegations of Paragraph 60 to the extent they set forth Plaintiff's own description of the citizenship verification process for which Plaintiff now seeks declaratory judgment. Intervenors deny that the information from the DDS database indicates that a covered voter registration applicant is not a citizen and not entitled to vote. Upon information and belief, Intervenors aver that Paragraph 60 is an incomplete description of the proposed verification procedures. Intervenors deny the remaining allegations in Paragraph 60.

61. The allegations in Paragraph 61 contain statements of law and/or conclusions of law to which no response is required. If deemed to allege facts, Intervenors admit the factual allegations of Paragraph 61 to the extent that they set forth Plaintiff's own description of the citizenship verification process for which Plaintiff seeks a declaratory judgment in this action. Intervenors deny that O.C.G.A. § 21-2-226 requires county boards of registrars to routinely conduct inquiries into the citizenship of voter registration applicants. Intervenors also deny the remaining allegations in Paragraph 61.

## Count I – Declaratory Judgment

62. Intervenors reincorporate by reference the responses to the allegations of Paragraphs 1-61.

63. Intervenors deny the allegations in Paragraph 63.

64. Intervenors deny that the voting change submitted by the State of Georgia is a HAVA verification process. Intervenors lack knowledge or information sufficient to form a belief as to the truth of whether the voting change was enacted without a discriminatory purpose.

65. Intervenors deny the allegations in Paragraph 65. Intervenors aver that Paragraph 65 omits the statutory requirement with respect to "denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title* . . . ." (omitted material in italics).

66. Intervenors deny the allegations in Paragraph 66. Intervenors aver that Paragraph 65 omits the statutory requirement with respect to "denying or abridging the right to vote on account of race or color, *or in contravention of the guarantees set forth in section 1973b(f)(2) of this title* . . . ." (omitted material in italics).

67. Intervenors deny the allegations in Paragraph 67.

68. Intervenors deny that the procedures described in Paragraph 68 do not worsen the position of minority voters and violate Section 5 of the VRA.

69. Intervenors deny the allegations in Paragraph 69.

70. Intervenors deny the allegations in Paragraph 70.

## Count II – Declaratory Judgment and Injunctive Relief

71. Intervenors reincorporate by reference the responses to the allegations of Paragraphs 1-70.

72. Intervenors deny the allegations of Paragraph 72 except to the extent they describe the relief sought by Plaintiff. Intervenors deny that Plaintiff is entitled to the relief sought in Paragraph 72.

73. Intervenors admit the allegations in Paragraph 73.

74. Intervenors admit the allegations of Paragraph 74, except to the extent that it characterizes conditions in 1982 by the phrase "even as late." Intervenors also aver that conditions justifying Georgia's continued coverage under Section 5 existed during the 2006 reauthorization of the VRA.

75. Intervenors deny the allegations of Paragraph 75 to the extent it suggests that Georgia and other jurisdictions are subject to Section 5's preclearance formula only because of the coverage formula based on the 1964, 1968, and 1972 Presidential elections. Intervenors aver that in 2006, Congress evaluated the continuing need for Section 5, and the continued coverage of Georgia and other jurisdictions. Intervenors admit that Congress did not amend the coverage formula during the 2006 reauthorization of Section 5 and that Georgia is a covered jurisdiction. Intervenors deny the remaining allegations in Paragraph 75.

76. Intervenors deny the allegations in Paragraph 76.

77. Intervenors deny the allegations in Paragraph 77.

78. Intervenors deny the allegations in Paragraph 78.

79. Intervenors deny the allegations of Paragraph 79, except that Intervenors admit that Section 2 of the VRA is a permanent provision, nationwide in scope, and permits challenges to

certain types of voting practices and procedures. Intervenors aver that the U.S. Supreme Court has found that Section 2 and Section 5 "combat different evils and, accordingly … impose very different duties upon the States." *Reno v. Bossier Parish School Board*, 520 U.S. 471, 477 (1997). Intervenors aver that Section 2 of the VRA is not an adequate substitute for Section 5 in Georgia.

80. Intervenors deny the allegations in Paragraph 80.

81. Intervenors deny the allegations in Paragraph 81.

82. Intervenors deny the allegations in Paragraph 82.

83. Intervenors deny the allegations of Paragraph 83. Intervenors deny that Section 5 of the VRA harms or has harmed minority voters in any way. On the contrary, Intervenors aver that Section 5 has been and continues to be a crucial protection for minority citizens against voting discrimination in Georgia and other covered jurisdictions.

84. Intervenors deny the allegations of Paragraph 84. Intervenors specifically deny that Section 5 prevents Georgia from conducting any federally-mandated activities with respect to HAVA.

85. Intervenors deny the allegations in Paragraph 85.

86. Intervenors admit the allegation of Paragraph 86, to the extent that Georgia is unable to change the requirements of HAVA, and deny the remainder of the allegations of Paragraph 86.

87. Intervenors admit the allegations of Paragraph 87 but aver that Paragraph 87 fails to identify numerous additional reasons for which bailout would be denied, should it be sought by Georgia.

88. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 without identification of the classes of governmental units purported to be enumerated by this paragraph.

89. Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 without identification of the classes of governmental units to which this paragraph refers. Intervenors deny the allegations of this paragraph with respect to any voting practice or procedure enacted by the Georgia Legislature, signed into effect by the Governor, or carried out at the direction of the Office of the Georgia Secretary of State. Intervenors aver that a substantial portion of the objections under Section 5 and other voting rights violations in Georgia have concerned election practices and procedures for counties and county school boards, which must be enacted by the Georgia Legislature and signed into effect by the Governor of Georgia. Intervenors further aver that the "exception" list which Plaintiff proposes to distribute to county registrars (*see* Paragraphs 54, 59 and 61) are to be used by county election officials at the specific direction of the Georgia Secretary of State.

90. Intervenors deny the allegations in Paragraph 90.

91. Intervenors deny the allegations in Paragraph 91.

August 2, 2010

                Respectfully submitted,

                /s  Kristen Clarke          _____
                John Payton
                  Director-Counsel
                Debo P. Adegbile
                  Associate Director-Counsel
                Ryan P. Haygood
                Dale E. Ho
                NAACP Legal Defense and
                  Educational Fund, Inc.
                99 Hudson Street, Suite 1600
                New York, New York 10013
                (212) 219-1900

                Kristen Clarke  (D.C. Bar No. 973885)
                NAACP Legal Defense and
                  Educational Fund, Inc.
                1444 Eye Street, N.W., 10th Floor
                Washington, D.C. 20005
                (202) 682-1300

                *Attorneys for Intervenors*