## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF GEORGIA, § § *Plaintiff*, § § v. § § ERIC H. HOLDER, JR., § ATTORNEY GENERAL OF THE § UNITED STATES, § § *Defendant*, § § GEORGIA ASSOCIATION OF § LATINO ELECTED OFFICIALS § § *Defendant-Intervenor*, § § CONCERNED BLACK CLERGY § OF METROPOLITAN ATLANTA, *et al.*, § § *Defendant-Intervenors*. § | CIVIL ACTION NO. 10-CV-1062 Three-Judge Panel: ESH-TBG-HHK |

### NOTICE BY DEFENDANT-INTERVENORS

Defendant-Intervenor Georgia Association of Elected Officials ("GALEO"), and Defendant-Intervenors Concerned Black Clergy of Metropolitan Atlanta, the Southern Regional Office of the Rainbow PUSH Coalition, Michael B. Wright, Sr., and Janice Mathis ("Concerned Black Clergy, *et al.*") (collectively, "Defendant-Intervenors") file this consolidated Notice following the Notice filed by Defendant Attorney General of the United States on August 16, 2010 ("Government's Notice"). *See* Dkt. No. 44.

This action was filed by Plaintiff State of Georgia on June 21, 2010, pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c ("Section 5"), and 28 U.S.C. § 2201, for preclearance of proposed voter registration procedures – including the use of a database maintained by the Georgia Department of Driver Services ("DDS") to verify voter registration

information ("DDS matching procedure").  In the alternative, Georgia seeks a declaratory judgment that continued enforcement of Section 5 is unconstitutional.

Georgia filed this action one year after a determination by the United States Department of Justice ("DOJ") that the DDS matching procedure – which Georgia had originally implemented in violation of Section 5 of the Voting Rights Act – was "seriously flawed" with respect to verification of U.S. citizenship, and that "[t]he impact of these errors falls disproportionately on minority voters."  Letter from U.S. Department of Justice to the Attorney General of Georgia (dated May 29, 2009) ("DOJ's Objection") attached as Exhibit 2 to Plaintiff's First Amended Complaint (finding that Georgia's "flawed system frequently subjects a disproportionate number of African-American, Asian, and/or Hispanic voters to additional and, more importantly, erroneous burdens on the right to register to vote.  These burdens are real, are substantial, and are retrogressive for minority voters.").

Here, Defendant-Intervenors GALEO and Concerned Black Clergy have moved to intervene permissively and as of right, in part, because the position of the United States is subject to change, sometimes very suddenly.[1]  *See* Dkt. No. 24 (granting GALEO's Motion to Intervene); Dkt. No. 30 (granting Concerned Black Clergy, *et al.*'s Motion to Intervene).  As a result, this long-standing risk makes it difficult for the intended beneficiaries of the Voting Rights Act to rely exclusively on the Attorney General to both consistently and adequately

---

[1] Indeed, as here, it is not unusual for federal agencies to adopt a mid-course revision it its litigation strategy or theory of the case, or to abandon a prior institutional position altogether in matters that implicate the nexus between civil rights and constitutional guarantees.  *See, e.g.*, *Grutter v. Bollinger*, 539 U.S. 306 (2003) (despite role in prohibiting discrimination of the basis of race, color, or national origin, United States reversed course and took position opposing affirmative action program); *Bob Jones Univ. v. United States*, 461 U.S. 574 n.9 (1983) (after the Court granted certiorari, the Government filed a motion to dismiss, informing the Court that the Department of Treasury intended to revoke a number of pertinent rulings and to recognize § 501(c)(3) exemptions for petitioners. However, the District of Columbia Circuit enjoined the Government from granting § 501(c)(3) tax-exempt status to any school that discriminates on the basis of race in *Wright v. Regan*, 656 F.2d 820 (D.C. Cir. 1981) (per curiam)).

defend their cognizable interests. Here, in spite of the United States's objection from 2009, the Attorney General's August 16 Notice informed the Court that the United States was satisfied that Georgia could meet its burden of proof under Section 5 that the DDS matching procedure described in Exhibit 6 of the First Amended Complaint, which itself was filed on that day, "was not adopted with a discriminatory purpose, nor will it have retrogressive effect." Dkt. No. 44. On August 18, 2010, the Attorney General administratively precleared a Section 5 submission of those amended procedures.

As a threshold matter, the Attorney General's Notice was filed within hours of Georgia filing the First Amended Complaint and accompanying exhibits. *Compare* Dkt. No. 38 (First Amended Complaint and accompanying exhibits filed on August 16, 2010, at 2:41 PM) *with* Dkt. No. 44 (Government's Notice filed on August 16, 2010, at 9:47 PM). Now with alacrity and dispatch, DOJ concedes that Georgia's matching procedure is non-retrogressive even though it previously objected to a substantially similar version of that DDS matching procedure in 2009. Indeed, DOJ administratively precleared the DDS matching procedure on August 18, 2010 – within one day of receiving the new preclearance submission from Georgia.

Georgia's August 17 submission of the DDS matching procedure, and its immediate preclearance by DOJ denied Defendant-Intervenors an opportunity to request and review any materials that may have been submitted by Georgia and denied Defendant-Intervenors access to the administrative preclearance process altogether. In particular, Defendant-Intervenors and all other interested persons were denied any opportunity to present public comment or objection. *See* 28 C.F.R. § 51.29 ("Any individual or group may send to the Attorney General information concerning a change affecting voting in a jurisdiction to which Section 5 applies"); 28 C.F.R. § 51.29(c) ("[I]ndividuals and groups are encouraged to comment as soon as they learn of the

...

change"); 28 C.F.R. § 51.28(f) (noting that, "[f]or submissions involving controversial or potentially controversial changes," Attorney General review is facilitated by "evidence of public notice, of the opportunity for the public to be heard, and of the opportunity for interested parties to participate in the decision to adopt the proposed change").

The Attorney General's filing of the August 16 Notice and the Attorney General's abrupt administrative preclearance of the DDS matching procedure raise questions about the nature of the analysis performed by the DOJ to assess the DDS matching procedure's discriminatory impact on minority voters. It is unclear what aspect of the DDS matching program purports to cure the "real," "substantial," and "retrogressive" nature of the voting change. Additionally, DOJ's handling of the administrative review of the matter now before this Court represents a departure from its normal course and practice. According to DOJ, Section 5 review of pending voting changes "often involves telephone interviews with persons representing or associated with the submitting authority, and with private citizens, particularly members of racial or language minority groups. Communications from the public regarding pending submissions are encouraged, and all information or comments received are considered." U.S. Dep't of Justice, Civil Rights Division, *How the Attorney General Reviews Section 5 Submissions*, *available at* http://www.justice.gov/crt/voting/sec_5/making.php; *see also* 28 C.F.R. § 51.29(d) ("Communications From Individuals and Groups"). It seems improbable that any such outreach accompanied the preclearance of the amended matching program. Moreover, language typically found in DOJ preclearance letters which makes clear that the Attorney General reserves the right to alter its determination if new information is uncovered before the expiration of the 60 day review period was not included here. In every respect, DOJ's handling of this matter runs contrary to its normal Section 5 administrative preclearance procedures and raises questions

about the Attorney General's claim that Georgia satisfies its burden regarding its DDS matching procedure.  *Compare* DOJ Objection (concluding that DDS matching procedure is "discriminatory" and "seriously flawed") *with* Exhibit A (granting administrative preclearance of DDS matching procedure).

Notwithstanding DOJ's new position on the DDS matching procedure at issue, Defendant-Intervenors continue to assert that Georgia cannot meet its Section 5 burden.  *See City of Richmond v. United States*, 422 U.S 358, 366 (1975) (Defendant-Intervenors maintained Section 5 defense notwithstanding consent judgment between Plaintiff and Attorney General). The changes to the DDS matching procedure reflected in Plaintiff's Exhibit 6 are not substantial and, based on available information, do not ameliorate the significant burden imposed on minority voters or cure the retrogressive effect underlying the identical matching procedure initially presented to this Court.  Defendant-Intervenors respectfully request that this Court order that Defendant Attorney General meet and confer, either in person or by telephone, with Defendant-Intervenors before the Court entertains the August 20 Joint Motion to Dismiss.

Dated this 21st day of August, 2010.             Respectfully submitted,

By: /s/ Nina Perales
Nina Perales
District of Columbia Bar No. TX0040
MEXICAN AMERICAN LEGAL
DEFENSE & EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, Texas 78205
(210) 224-5476 (telephone)
(210) 224-5382 (facsimile)
nperales@maldef.org
*Counsel for Defendant-Intervenor GALEO*

By: /s/ Kristen Clarke
John Payton
  Director-Counsel
Debo P. Adegbile
  Associate Director-Counsel
Ryan P. Haygood
Dale E. Ho
NAACP Legal Defense and
  Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 219-1900

Kristen Clarke
District of Columbia Bar No. 973885
NAACP Legal Defense and
  Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300
kclarke@naacpldf.org
*Counsel for Defendant-Intervenors*
*Concerned Black Clergy of Metropolitan Atlanta,*
  *et al.*

## CERTIFICATE OF SERVICE

I, Nina Perales, hereby certify that on August 21, 2010, I caused to be served a copy of the foregoing through the Court's CM/ECF filing system to counsel of record.

DATE: August 21, 2010                                             /s/ Nina Perales
                                                                                    Nina Perales