UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STATE OF GEORGIA, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-1062 (ESH) |
| ERIC H. HOLDER, in his official capacity as Attorney General of the United States, | ) ) ) ) ) | |
| Defendant, | ) ) | |
| TYRONE BROOKS, *et al.*, | ) ) | |
| Defendant-Intervenors, | ) ) | |
| GEORGIA ASSOCIATION OF LATINO ELECTED OFFICIALS, | ) ) ) | |
| Defendant-Intervenor, | ) ) | |
| MARVIN LIM, *et al.*, | ) ) | |
| Defendant-Intervenors, | ) ) | |
| CONCERNED BLACK CLERGY, *et al.*, | ) ) | |
| Defendant-Intervenors. | ) ) | |

**ORDER**

Plaintiff State of Georgia filed this case against the United States Attorney General seeking preclearance under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, of its "voter registration application information verification process" ("Verification Process") or, in the alternative, a declaration that Section 5 is unconstitutional. (Compl. ¶¶ 62-91, filed June 22, 2010.) Before the Court is the joint motion of the parties to voluntarily dismiss the case pursuant

to Federal Rule of Civil Procedure 41(a)(2). (Joint Mot. to Dismiss, Aug. 20, 2010 [dkt. #46].) For the reasons stated herein, that motion will be granted.

Under Section 5 of the Voting Rights Act, "covered jurisdictions" must "delay implementation of validly enacted state legislation until federal authorities have had an opportunity to determine whether that legislation conforms to the Constitution and to the provisions of the Voting Rights Act." *Morris v. Gressette*, 432 U.S. 491, 501-02 (1977). Under Section 5, there are two alternative paths to preclearance: administrative preclearance through the Department of Justice or judicial preclearance via a civil action for declaratory judgment in the District Court for the District of Columbia. 42 U.S.C. § 1973c(a); 28 C.F.R. § 51.10; *see Morris*, 432 U.S. at 502. A covered jurisdiction may pursue either option or both simultaneously. Through the judicial path, the proposed voting change may be implemented if the court declares that the change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color." 42 U.S.C. § 1973c(a); *Morris*, 432 U.S. at 502. The administrative path, however, allows a proposed change to be implemented if it "has been submitted . . . to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission," or "the Attorney General has affirmatively indicated that such objection will not be made." 42 U.S.C. § 1973c(a); 28 C.F.R. § 51.41; *Morris*, 432 U.S. at 502.[1] There is no judicial review of the Attorney General's decision not to

---

[1] "In the event the Attorney General affirmatively indicates that no objection will be made within the sixty-day period following receipt of a submission, the Attorney General may reserve the right to reexamine the submission if additional information comes to his attention during the remainder of the sixty-day period which would otherwise require objection in accordance with this section." 42 U.S.C. § 1973c(a).

interpose an objection to the proposed change. *See Morris*, 432 U.S. at 504.[2] Thus, once the Department of Justice grants administrative preclearance, any pending judicial preclearance action becomes necessarily moot. *See id.*[3]

After the present action was filed, and with the consent of both plaintiff and defendant, the Court granted permissive intervention to four groups of defendant-intervenors: (1) Tyrone Brooks, *et al.* ("Brooks Intervenors") (Order of July 7, 2010 [dkt. #6]); (2) Georgia Ass'n of Latino Elected Officials ("GALEO Intervenor") (Order of July 28, 2010 [dkt. #24]); (3) Marvin Lim, *et al.* ("Lim Intervenors") (Order of July 29, 2010 [dkt. #25]); and (4) Concerned Black Clergy, *et al.* ("Concerned Black Clergy Intervenors") (Order of Aug. 3, 2010 [dkt. #30]). On August 16, 2010, plaintiff amended its complaint to reflect that it had revised its proposed Verification Process. (Am. Compl., Aug. 16, 2010.) That same day, defendant notified the Court that after having "conferred extensively with Plaintiff State of Georgia concerning this

---

[2]In *Morris*, the Court explained:

> In light of the potential severity of the section 5 remedy, the statutory language, and the legislative history, we think it clear that Congress intended to provide covered jurisdictions with an expeditious alternative to declaratory judgment actions. The congressional intent is plain: The extraordinary remedy of postponing the implementation of validly enacted state legislation was to come to an end when the Attorney General failed to interpose a timely objection based on a complete submission. Although there was to be no bar to subsequent constitutional challenges to the implemented legislation, there also was to be no dragging out of the extraordinary federal remedy beyond the period specified in the statute. . . . Since judicial review of the Attorney General's actions would unavoidably extend this period, it is necessarily precluded.

432 U.S. at 504-05 (internal quotations omitted).

[3]However, "[n]either an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object, nor a declaratory judgment entered [by a court] . . . bar[s] a subsequent action to enjoin enforcement" of the change. 42 U.S.C. § 1973c(a); 28 C.F.R. § 51.41

matter since the fall of 2008," and having reviewed the revised proposed verification process, it no longer opposed preclearance by the Court. (Def.'s Notice at 2, Aug. 16, 2010 [dkt. #44].)

Then, on August 18, 2010, the United States Department of Justice informed plaintiff that it did not intend to object to implementation of the revised Verification Process. (Joint Mot. to Dismiss, Ex. 1.) As there is no judicial review of this decision, the revised Verification Process has achieved preclearance and may be implemented. *See Morris*, 432 U.S. at 504. Accordingly, on August 20, 2010, plaintiff and defendant jointly filed the pending motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2) on the basis that this action had become moot. (Joint Mot. to Dismiss at 2.)

All of the defendant-intervenors agree that the present action is moot and should be dismissed. (Resp. of Concerned Black Clergy Intervenors at 2, Sept. 7, 2010 [dkt. #48]; Resp. of Brooks, GALEO and Lim Intervenors at 2, Sept. 7, 2010 ("Brooks, GALEO, Lim Resp.") [dkt. #49].) Nonetheless, three of the four groups of intervenors have asked the Court "to use its authority under Rule 41(a)(2) [] to grant voluntary dismissal only 'on terms that the court considers proper.'" (Brooks, GALEO, Lim Resp. at 2 (quoting Fed. R. Civ. P. 41(a)(2)).) They contend that the Court should "conduct a review of the events leading to the Joint Motion to Dismiss prior to dismissing this action" because

> the circumstances under which the State of Georgia obtained administrative preclearance for its new voter registration procedures, on August 18, were highly irregular, and that the manner in which the administrative request was made and acted upon was calculated to deprive Intervenors of the opportunity to contest, comment upon, or play any role in the disposition of the voting procedures for which the State had sought preclearance in this Court.

(*Id.* at 3.) Accordingly, these defendant-intervenors request that the Court require the State of Georgia and the Department of Justice "to explain and justify their conduct," "[s]pecifically, . . .

4

why they conducted an unusual end-run around this litigation via a supplemental administrative review of the two voter registration procedures at issue here, and why the administrative review was conducted and completed within a period of 24 hours, with no notice to the public or to the Intervenors." (*Id.*) Based upon this inquiry, they submit that the Court could include in its ruling on the motion to dismiss "such findings as appropriate to prevent Defendant-Intervenors in future Section 5 preclearance actions in this Court from suffering similar prejudice." (*Id.*)

Defendant-intervenors cite no authority, beyond the language of Rule 41(a)(2), for their novel claim that the Court has the power in a judicial preclearance proceeding to review the Department of Justice's conduct during administrative preclearance proceedings and, perhaps, impose requirements on how the Department of Justice conducts such proceedings in the future. Indeed, such a suggestion appears at odds with the Voting Rights Act's clear demarcation between the two proceedings. Given the statutory scheme and the narrow issue actually before the Court in a judicial preclearance action, the Court may well lack the authority to use the occasion of the dismissal of a mooted judicial preclearance proceeding to impose requirements on the conduct of future administrative preclearance proceedings. The Court need not answer that question today, however, because defendant-intervenors' proposed conditions are not "terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Defendant-intervenors concede that the case is now moot because the sole legal dispute – whether the State of Georgia's proposed Verification Process is entitled to preclearance – has been resolved. In this posture, it would not be "proper" to condition dismissal with a requirement that the United States and the State of Georgia "explain and justify" their strategic conduct prior to the case becoming moot.

Accordingly, it is hereby

**ORDERED** that the joint motion to dismiss filed by plaintiff and defendant is **GRANTED**; and it is further

**ORDERED** that the above-captioned action is **DISMISSED**.

/s/
THOMAS B. GRIFFITH
United States Circuit Judge

/s/
HENRY H. KENNEDY, JR.
United States District Judge

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: November 2, 2010